Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**RECEIVED**

SEP 21 2023

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

# UNITED STATES DISTRICT COURT

for the

District of

Division

Case No. 4-23-cv-373

*(to be filled in by the Clerk's Office)*

_____
*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

_____
*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

Jury Trial: *(check one)*  ☒ Yes  ☐ No

## COMPLAINT FOR A CIVIL CASE

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name              Menlay Tidruu
Street Address    P.O. Box 222
City and County   Gilbert, IA 50105 Story
State and Zip Code 50105, Iowa
Telephone Number
E-mail Address    mtctyasel@gmail

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Defendant No. 1

Name — Mary Vermeer Andringa
Job or Title *(if known)* — Member of the Board of Regents
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address *(if known)*

Defendant No. 2

Name — Sherry Bates
Job or Title *(if known)* — Member of the Board of Regents
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address *(if known)*

Defendant No. 3

Name — Clifford Bergman
Job or Title *(if known)* — Former Math Dept Chair
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address *(if known)*

Defendant No. 4

Name — Dawn Bratsch-Prince
Job or Title *(if known)* — Former ISU Associate Provost
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 5

    Name — *Susan Carlson*

    Job or Title *(if known)* — *Former ISU Associate Provost*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 6

    Name — *George A. Carroll*

    Job or Title *(if known)* — *Assistant Iowa Attorney General*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3. 7

    Name — *Patty Cownie*

    Job or Title *(if known)* — *Former Member of the Board of Regents*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 8

    Name — *Joan Cunnick*

    Job or Title *(if known)* — *Faculty member at ISU*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 9

Name ___ Bob Donley

Job or Title *(if known)* ___ Former President of the Board of Regent

Street Address ___

City and County ___

State and Zip Code ___

Telephone Number ___

E-mail Address *(if known)* ___

Defendant No. 2 10

Name ___ Milt DaBovitch

Job or Title *(if known)* ___ Member of the Board of Regents

Street Address ___

City and County ___

State and Zip Code ___

Telephone Number ___

E-mail Address *(if known)* ___

Defendant No. 3 11

Name ___ Jennifer Davidson

Job or Title *(if known)* ___ Former Math Dept Associate Chair

Street Address ___

City and County ___

State and Zip Code ___

Telephone Number ___

E-mail Address *(if known)* ___

Defendant No. 4 12

Name ___ Domenico D'Allesandro

Job or Title *(if known)* ___ Faculty member at ISU

Street Address ___

City and County ___

State and Zip Code ___

Telephone Number ___

E-mail Address *(if known)* ___

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. ~~1~~ 13
    Name                         *Maureen DeArmond*
    Job or Title *(if known)*   *University Counsel Associate*
    Street Address
    City and County
    State and Zip Code
    Telephone Number
    E-mail Address *(if known)*

Defendant No. 2 14
    Name                         *Eugene Deisinger*
    Job or Title *(if known)*   *Former director of the Dept of Public Safety at ISU*
    Street Address
    City and County
    State and Zip Code
    Telephone Number
    E-mail Address *(if known)*

Defendant No. 3 15
    Name                         *Christopher J. Deist*
    Job or Title *(if known)*   *Assistant Attorney General IA*
    Street Address
    City and County
    State and Zip Code
    Telephone Number
    E-mail Address *(if known)*

Defendant No. 4 16
    Name                         *Jordan G. Esbrook*
    Job or Title *(if known)*   *Assistant Iowa Attorney General*
    Street Address
    City and County
    State and Zip Code
    Telephone Number
    E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1 17

    Name      *Steve Freeman*

    Job or Title *(if known)*      *Faculty member at ISU*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 2 18

    Name      *Elizabeth Hoffman*

    Job or Title *(if known)*      *Former Provost at ISU*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3 19

    Name      *Leslie Hogben*

    Job or Title *(if known)*      *Faculty member at ISU*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4 20

    Name      *Elgin Johnston*

    Job or Title *(if known)*      *Faculty member at ISU*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 21

    Name                     Wolfgang Klienann

    Job or Title *(if known)*   Former Math Dept Chair

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 2  22

    Name                     Steven Leath

    Job or Title *(if known)*   Former ISU President

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3  23

    Name                     Howard Levine

    Job or Title *(if known)*   Former Faculty at ISU

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4  24

    Name                     Glenn Luecke

    Job or Title *(if known)*   Former Faculty member at ISU

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 4. 25

    Name                  Roger Maddux

    Job or Title *(if known)*  Former Faculty member at ISU

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 2. 26

    Name                  Michael Martin

    Job or Title *(if known)*  Former Faculty Member at ISU

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3. 27

    Name                  Larry McKibben

    Job or Title *(if known)*  Former member of the Board of Regents

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4. 28

    Name                  Mark Miller

    Job or Title *(if known)*  For Member Faculty member at ISU

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 29

Name — *Katie Mulholand*

Job or Title *(if known)* — *Member of the Board of Regents*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 30

Name — *Kathryn Overberg*

Job or Title *(if known)* — *Assistan University Counsel Associate*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 31

Name — *Justin Peters*

Job or Title *(if known)* — *Former Math Dept Chair*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 32

Name — *Yiu-Tung Poon*

Job or Title *(if known)* — *Faculty member at ISU*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. X 33
    Name                          David M. Ramscht
    Job or Title (if known)       Assistant Att. IIA Attorney General
    Street Address
    City and County
    State and Zip Code
    Telephone Number
    E-mail Address (if known)

Defendant No. 2 34
    Name                          Bruce Rastetter
    Job or Title (if known)       Member of the Board of Regents
    Street Address
    City and County
    State and Zip Code
    Telephone Number
    E-mail Address (if known)

Defendant No. 3 35
    Name                          Paul Sacks
    Job or Title (if known)       Faculty member at ISU
    Street Address
    City and County
    State and Zip Code
    Telephone Number
    E-mail Address (if known)

Defendant No. 4 36
    Name                          Beate Schmittmann
    Job or Title (if known)       Former LAS Dean at ISU
    Street Address
    City and County
    State and Zip Code
    Telephone Number
    E-mail Address (if known)

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. X 3 4

    Name — _Anne VanderZanden_

    Job or Title *(if known)* — _Faculty member at ISU_

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 2 3 8

    Name — _Dennis Vigil_

    Job or Title *(if known)* — _Faculty member at ISU_

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3 3 9

    Name — _Michael Whiteford_

    Job or Title *(if known)* — _Former LAS Dean at ISU_

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4 4 0

    Name — _John Jonathan Wickert_

    Job or Title *(if known)* — _Former Provost at ISU_

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1 #1

    Name                    *Zhijun Wu*

    Job or Title *(if known)*   *Faculty member at ISU*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 2 #2

    Name                    *ISU*

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3 #3

    Name                    *The Board of Regents of Iowa*

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.   Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question               ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.   If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

*See Complaint*

### B.   If the Basis for Jurisdiction Is Diversity of Citizenship

1.   The Plaintiff(s)

a.   If the plaintiff is an individual
The plaintiff, *(name)* _Moulay Tidrini_ , is a citizen of the
State of *(name)* _Iowa_ .

b.   If the plaintiff is a corporation
The plaintiff, *(name)* _____ , is incorporated
under the laws of the State of *(name)* _____ ,
and has its principal place of business in the State of *(name)* _____
_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.   The Defendant(s)

a.   If the defendant is an individual
The defendant, *(name)* _Mary Vermeer Andringa_ . is a citizen of
the State of *(name)* _Iowa_ . Or is a citizen of
*(foreign nation)* _____ .

    b.    If the defendant is a corporation

        The defendant, *(name)* _____ , is incorporated under

        the laws of the State of *(name)* _____ , and has its

        principal place of business in the State of *(name)* _____ .

        Or is incorporated under the laws of *(foreign nation)* _____ ,

        and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.    The Amount in Controversy

        The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

    *See Complaint*

## III.  Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

*See Complaint*

## IV.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

*See Complaint*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        _M. Tidrini_ September 21, 2023

Signature of Plaintiff        _M. Tidrini_

Printed Name of Plaintiff        _Moulay Tidrini_

### B.   For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF IOWA

Dr. Moulay Tidriri )

Plaintiff )

v. ) Civil Action No.

The Board of Regents, ISU, Mary Vermeer Andringa, Sherry Bates, )
Clifford Bergman, Dawn Bratsch-Prince, Susan Carlson, George A. )
Carroll, Patty Cownie, Joan Cunnick, Bob Donley, Milt Dakovitch, )
Jennifer Davidson a.k.a Newman, Domenico D'Allesandro, Maureen )  COMPLAINT
DeArmond, Eugene Deisinger, Christopher J. Deist, Jordan G. )
Esbrook, Steven Freeman, Elizabeth Hoffman, Leslie Hogben, Elgin )
Johnston, Wolfgang Kliemann, Steven Leath, Howard Levine, )
Glenn Luecke, Roger Maddux, Michael Martin, Larry McKibben, )
Mark Miller, Katie Mulholand, Kathryn Overberg, Justin Peters, )
Yiu Tung Poon, David M. Ranscht, Bruce Rastetter, Paul Sacks, )
Beate Schmittmann, Anne VanderZanden, Dennis Vigil, )
Michael Whiteford, Jonathan Wickert, Zhijun Wu. )

Defendants

To: Clerk of the United States District Court.

## Table of Contents

I. Jurisdiction and academic background...............4

II. The University and its lawyers, fabricated and forged a post-tenure review report of Pl. in Spring 2012 and used it to initiate a disciplinary proceeding in retaliation for Plaintiff's filing with the court, and to induce and procure the decision in the August 2014 administrative hearing terminating Plaintiff's tenured professorship.................5

II.1 The University, the FSCA, the Regents, and their lawyers' corrupt activities to suppress the truth about the fraudulent content of Kliemann's 2012 PTR..........................6

II.2 Defendants' reckless and egregious disregard of the procedures and rules of the faculty handbook and indifference to Plaintiff's constitutional rights, and fabrication of false evidence in the administrative hearing...................7

II.3 Defendants' judicial interference with the court proceedings and the administrative hearing to suppress the truth about Kliemann's 2012 PTR..........................10

II.4 The University complaint of unacceptable performance was fundamentally based on the 2012 post-tenure review report that was unequivocally proven to be fabricated and forged by the unrebutted testimony of Prof. Irv Hentzel...............12

II.5 New evidence discovered after the administrative hearing showed unequivocally that the 2012 post-tenure review of Pl. was never conducted.......................15

1

**III.** The hearing testimonies of witnesses with first-hand knowledge of Plaintiff's performance showed that, without the use of Kliemann's 2012 PTR, the University would not have prevailed in the administrative hearing......................17

**IV.** The University, its lawyers, and ALJ Greta's corrupt activities to suppress the truth about the discovered fact that Kliemann's 2012 PTR was fabricated and forged..........................20

**V.** The University, the FSCA, the Regents, and their lawyers' corrupt activities to suppress the truth about the discovered fact that Kliemann's 2012 PTR was fabricated and forged.....................21

**V.1** Pl.'s November 17, 2014 requests for leave to present fundamental new evidence and to present oral argument to ISU President Leath were denied.....................21

**V.2** Pl.'s March 5, 2015 requests for leave to present fundamental new evidence and to present oral argument to the Regents were denied. .................22

**V.3** The obstruction of Pl.'s appeals...................22

**VI.** The University 2009 post tenure review report of Pl. used in the 2011-2014 court proceedings and in the 2012-2014 administrative proceedings was fabricated and forged.................22

**VII.** The University 2006 post tenure review report of Pl. used in the 2011-2014 court proceedings and in the 2012-2014 administrative proceedings was fabricated and forged...................25

**VIII.** The University annual evaluations of Pl. for 2004-2012 used in the 2011-2014 court proceedings and in the 2012-2014 administrative proceedings were fabricated...............25

**IX.** The University students entries from Kliemann's students surveys of classes Pl. taught, and that were used in the 2011-2014 court proceedings, and in the 2012-2014 administrative proceedings were fabricated........................25

**X.** Without the use of the fabricated false evidence, the University would not have prevailed in the August 2014 administrative hearing..........................26

**XI.** In their responses to Pl.'s complaints with the FSCA, the University, the Regents, and the EEOC and ICRC, Defendants used fabricated false evidence....................26

**XII.** Defendants subjected Pl. to increasing retaliation and hostile work environment after he filed his first complaints with LAS Dean Whiteford in 2006, the FSCA in 2007 and 2008, and the EEOC and ICRC in 2008 and 2009, and the court in 2011.................28

**XIII.** Defendants' extensive use of fabricated false evidence in the 2011-2014 court proceedings and the March 9, 2018 post-trial motions ruling.....................29

**XIV.** The defendants who participated individually and/or in concert to deliberately fabricate false evidence and/or suppress the truth about this fabricated false evidence................31

**XV.** The testimonies of witnesses with first-hand knowledge of Pl.'s performance showed that, without the University's use of fabricated false evidence, the Pl. would have prevailed in the May 2014 Trial...........................33

**XVI.** Without the University and the Board of Regents' use of the fabricated and forged Kliemann's 2012 PTR, Plaintiff would have prevailed in his 2013 judicial review on his appeals on the fraudulent content of Kliemann's 2012 PTR............................34

**XVII.** Defendants' wrongful conduct committed after the state court May 2014 trial and August 2014 administrative hearing...............34

**XVII.1** New evidence discovered after the August 2014 administrative hearing showed that Kliemann's 2012 post-tenure review report, prepared at the direction of Carroll, Esbrook, and Overberg, was completely fabricated and forged....................34

**XVII.2** The Defs., including Carroll, Esbrook, and Overberg, used fabricated false evidence to induce and procure the proposed decision in the August 2014 administrative hearing...................34

**XVII.3** After the 2014 August hearing, the University, the University Lawyers, and Dept Chair Bergman formed a new tenured review committee to conduct a new post-tenure review of Pl..........35

**XVII.4** The Defs.' published defamatory material online and in local and national media and newspapers against the Pl. based on fabricated, falsified, and forged documents....................35

**XVII.5** Pl.'s November 17, 2014 requests for leave to present fundamental new evidence and to present oral argument to ISU President Leath............................35

**XVII.6** Pl.'s March 5, 2015 requests for leave to present fundamental new evidence and to present oral argument to the Regents were denied...........................36

**XVII.7** Defs. used fabricated false evidence to induce and procure the Regents' final decision in June 2015....................36

**XVII.8** Based on false annual evaluations for 2013-2014, Dept Chair Bergman, LAS Dean Schmittmann, Provost Wickert, and ISU President Leath gave Pl. 0% salary raises for 2014-2015...........................37

**XVII.9** On March 28, 2016, Pl. filed a complaint with the EEOC and the ICRC on the wrongful termination and related issues...........................38

**XVII.10** Defs. used fabricated false evidence to induce and procure favourable decisions in the EEOC and ICRC investigations in April and June 2017...........38

**XVII.11** The remarkable four years delay to act by Judge Ruigh enabled Defs. to inflict multiple injuries on Pl......................................39

**XVII.12** Defs. prepared and presented fabricated false evidence to induce and procure the jury verdict in the state court May 2014 trial and Judge Ruigh's decision on March 9, 2018, depriving Pl. of new trial..........................39

**XVII.13** Defs.'s corrupt activities to suppress the truth about their use of fabricated false evidence to induce and procure the federal court decisions to dismiss Pl.'s lawsuits 4:20-cv-85 and 4:19-cv-321 in September 2020 and the decision on his appeals with the 8th circuit in September 22, 2021.........39

**XVII.14** Defendants deprived Pl. of his constitutional right to access to the court and his constitutional right to sue and maintain his lawsuit...................40

**XVII.15** Without Defendants' use of fabricated false evidence, the Pl. would have prevailed in his federal cases claims including, in his Whistleblower retaliation and ICRA claims......................41

**XVII.16** April 2023 decision on Plaintiff's tort claims filed with the state of Iowa.................41

**XVIII.** Legal counts......................................41

Appendix A: Wrongful conduct of Defendants.

Appendix B: Appellant's brief on appeal to the President of Iowa State University; Request for oral argument.

Appendix C: Defendants' corrupt activities to suppress the truth about their use of fabricated false evidence in Plaintiff's federal cases, Part I.

Appendix D: Defendants' corrupt activities to suppress the truth about their use of fabricated false evidence in Plaintiff's federal cases, Part II.

## I. Jurisdiction and academic background.

**1.** Pl. is an individual resident of the State of Iowa.

**2.** Defendant Iowa State Board of Regents ("the Regents") is an agency of the State of Iowa with governing authority over, and responsibility for, Defendant Iowa State University of Science and Technology ("ISU").

**3.** ISU is a public educational institution created under Iowa law and governed by the Regents.

**4.** The defendants are individuals who, at material times, were residents of the State of Iowa.

**5. Academic background and national security clearance.** During 1989-1992, Pl. worked for ESA (the European Space Agency) and the French Dept of Defense. He initiated and developed the first successful multi-scale and multi-models methods and algorithms, and applied them successfully to re-entry problems for space vehicles. In 1992, he accepted a faculty position at Yale University. He also worked at NASA Langley Research Center. He had security clearance from all federal intelligence agencies of this country. He received the green card (permanent residency status) in the category: Extraordinary Ability. He later became a US Citizen. While at Yale University and NASA Langley, he collaborated with the IBM Research Center and obtained the first successful parallel computations on their experimental parallel machine SP1, which he presented in a conference in Paris. He also collaborated on research projects with United Technology Research Center in Hartford, Connecticut, which built engines for fighter jets used by the Air Force and the Department of Defense. He had also continued working on multi-scale methods and their applications to Space Vehicles Re-entry Problems. In 1996, Prof. Max Gunzburger, the Chair of the Mathematics Dept at ISU, met with Pl. at Langley and offered to hire Pl. to build a program in multi-scale research. Pl. later accepted the offer. At the time, Pl. had also an offer from the highly prestigious C.N.R.S (National Science Research Center)

of France. Other universities that were interested in hiring him included Stanford University, M.I.T., Princeton, Harvard, Oxford University (England), and E.T.H. (Zurich, Switzerland).

At ISU, Pl. had held continuously prestigious research awards from federal agencies including the Air Force Office of Research and the Department of Defense and the National Science Foundation, until Dept Chairs Peters and Kliemann, in concert with LAS College Dean Whiteford, Associate Provost Carlson, Provost Hoffman, and the University Lawyers Carroll, Esbrook, and Overberg, improperly terminated them in 2005 and in 2011.

Pl.'s ideas and methods have since been used by many researchers and engineers around the world. In this country, multiple research projects funded every year by the National Science Foundation, the Dept of Defense, and the Dept of Energy, implement and use these ideas and methods.

**II. The University and its lawyers, fabricated and forged a post-tenure review report of Plaintiff in Spring 2012 and used it to initiate a disciplinary proceeding in retaliation for Plaintiff's filing with the court, and to induce and procure the decision in the August 2014 administrative hearing terminating Plaintiff's tenured professorship.**

**6. The purported Kliemann's 2012 PTR.** After Pl. filed a lawsuit in April 2011, at the direction of the University Lawyers Carroll, Esbrook, and Overberg, Kliemann prepared in Spring 2012, a post-tenure review report of Pl.. Because of the ongoing litigation and the clear conflict of interest Pl. had with Dept Chairs Peters and Kliemann (both defendants in Pl.'s lawsuit), Pl. refused to participate, and objected to any "review" by these Defs.. Despite Pl.'s opposition, in Fall 2012, Dept chair Kliemann left in Pl.'s mailbox a post-tenure review report of Pl. and an action plan based on it. Pl. was never aware that any such a review was ever conducted in Spring 2012 or before. Kliemann claimed that such a 2012 post-tenure review was conducted in Spring 2012, and a 2012 post-tenure review report ("Kliemann's 2012 PTR") was prepared, written, voted on, and signed by the 2012 Dept Tenured Faculty Review Committee, which consisted of the following Math faculty: D'Alessandro, Hentzel, Hogben, Maddux, Poon, and Wu. The purpose of the action plan was to remedy Kliemann's claims of the deficiency in Pl. performance described in Kliemann's 2012 PTR.

**7. During the review period covered by Kliemann's 2012 PTR, Pl.'s performance was**

5

**satisfactory.** During the period of the supposed review, Pl. had a prestigious research award from the National Science Foundation ("NSF"). Pl. was serving as an Associate Editor for the SIAM J. Numerical Analysis, the premier journal in the world in the field of Numerical Analysis. Pl. was also a member of a panel review in Washington, D.C. for the Federal Dept of Energy. Very few people in the history of the Mathematics Dept had had NSF funding in fundamental research in mathematics. A review of Pl. for the five years period 2004-2008 was conducted by the Faculty Senate Committee on Appeals ("FSCA") in Spring 2009 (App. A ¶44). The Ad-Hoc Committee, which was formed of independent faculty that did the investigation, found that Pl.'s performance in all areas of responsibility was good. They stressed that Pl.'s NSF award proved the high quality of Pl.'s research. They also studied the students surveys that were sent to them by the Dept Administration and found Pl.'s teaching was good. The above proves that Pl.'s performance in all areas of responsibility was satisfactory. Therefore, the content of Kliemann's 2012 PTR was fraudulent. Therefore, Pl. refused to accept the University's action plan.

**II.1 The University, the FSCA, the Regents, and their lawyers' corrupt activities to suppress the truth about the fraudulent content of Kliemann's 2012 PTR.**

8. In September 2012, Pl. filed a timely appeal according to University Rules and Procedures with the FSCA against Kliemann based on the fact that the content of Kliemann's 2012 PTR was fraudulent. Initially, the FSCA planned to review the appeal. Discovery documents Pl. obtained in 2012-2014, showed that after *interference from Provost Wickert, Associate Provost Bratsch-Prince, and the University Lawyers Carroll, Esbrook, and Overberg, the FSCA decided to not review Pl.'s appeal* in violation of the Faculty Handbook Rules and Procedures, effectively adopting and endorsing the wrongful acts or omissions that were reported.

9. In October respectively November, and December of 2012, and January 2013, Pl. filed a timely appeal according to University Rules and Procedures with LAS Dean Schmittmann respectively Provost Wickert, ISU president Leath, and the Regents. They all refused to review the appeal, effectively adopting and endorsing the wrongful acts or omissions that were reported. This obstruction confirmed the Administration, the Regents, and the University Lawyers' knowledge and efforts to suppress the

truth about the fact that Kliemann's 2012 PTR was actually fabricated and forged. Pl. then filed an appeal through judicial review with the Court.

10.  On July 15, 2013, Dept Chair Kliemann filed a complaint of unacceptable performance against Pl. based on Kliemann 2012 PTR with LAS Dean Schmittmann in retaliation to Pl.'s refusal to accept their action plan. In August 2013, Schmittmann filed an "unacceptable performance of duty complaint" against Pl. with Provost Wickert.

11.  In September 2013 respectively October, and November of 2013, Pl. filed a timely appeal with Provost Wickert respectively ISU president Leath, and the Regents, regarding Schmittmann's filing of unacceptable performance of duty complaint against Pl. They refused to review the appeal, effectively adopting and endorsing the wrongful acts or omissions that were reported.

**II.2 Defendants' reckless and egregious disregard of the procedures and rules of the faculty handbook and indifference to Plaintiff's constitutional rights and fabrication of false evidence in the administrative hearing.**

12. **Kliemann's Conflict of interest.**  Kliemann had a clear conflict of interest in providing any review or evaluation of Pl.. At the time he prepared his "performance summary", and at other relevant times, he has been a defendant in litigation brought by Pl. and, as discussed elsewhere in this complaint, he admitted that the "performance summary" was prepared for litigation purposes at the suggestion and direction of his legal counsel, and was motivated by the fact that Pl. had sued members of the University community. There can be no serious dispute that such a plain conflict of interest should have precluded Kliemann's involvement in any review of Pl. and should have precluded the Dean's reliance on his report. Pl. testified without rebuttal that Steven Freeman, Chair of the Faculty Senate Committee on Appeals at relevant times, told him directly that those individuals with whom Pl. was involved in litigation or internal disputes are barred from participating in any review of his performance (Tr. pp. 555-557). (App. B p. 6, 9-11). Here, Tr. refers to the transcript of the administrative hearing.

13. **The College and the University failed to engage in the efforts mandated by their own rules to resolve "concerns" without filing a complaint.**  The Faculty Handbook requires that before a complaint of unacceptable performance is brought, both the College and the University officials

are obligated to make reasonable, documented efforts to resolve the matter with the involved faculty member. It is undisputed, as acknowledged by both Dean Schmittmann and Provost Wickert, that no such efforts were undertaken (App. B pp. 7-9). Thus, the record is devoid of evidence of any "reasonable documented efforts" made by the College or University officers to resolve the complaint of unacceptable performance before it was filed. It is clear such "documented" efforts are conditions precedent to the filing of a complaint seeking dismissal for unacceptable performance. As proved in ¶¶22-53, it is clear that the most recent post-tenure review report available to Dean Schmittmann, and relied upon by her and Kliemann, was a fabricated and forged report. Reasonable efforts to resolve concerns in advance of filing a complaint might well have discovered that fact.

**14. The College and the University applied Section 7.2.2.5.1 retro-actively in violation of the Faculty Handbook.** The review period the College and the University used fell entirely outside the scope of the Faculty Handbook (App. B pp. p. 8).

**15. Dean Schmittmann's complaint was not based on a proper written record, but rather was improperly based on a summary report prepared by Kliemann at the direction of counsel for purposes of litigation.**

Dean Schmittmann's complaint is based entirely upon the July 15, 2013 "performance summary", prepared by Wolfgang Kliemann. As discussed in App. B pp. 9-11, a complaint of unacceptable performance must be based on the "written record" and Dean Schmittmann's Complaint explicitly stated that the written record consisted of "a performance summary and an appendix, containing a collection of supporting documents" prepared by the former Chair of the Department of Mathematics, Wolfgang Kliemann. At the time when Kliemann prepared this report, he was no longer a chair and he had no official responsibilities for overseeing or evaluating Pl.. Kliemann admitted in his testimony in this matter that the "performance summary" was prepared at the direction of his legal counsel for the purposes of litigation in which he was a named defendant being sued by Pl.. (Tr. pp. 324, 389) In fact, Kliemann went so far as to volunteer that the "performance summary" was prepared because "Dr. Tidriri had decided to take ... many members of the University to court, including myself ...." (Tr. p. 324, emphasis added) He further acknowledged that a "probably very strong motivation" for preparing the report was

8

that he had been sued by Professor Tidriri. (Tr. p. 389) Thus, the Dean's initiation of the Complaint

and all of the ensuing proceedings have as their primary foundation a document that was: (a) prepared

outside ordinary review procedures, (b) prepared by an individual with a plain, and known, conflict

of interest, and (c) prepared at the suggestion of University counsel not for the purposes of providing

an unbiased performance review, but instead for the purposes of defending its author in litigation. On

their face, these undisputed facts, combined with the extraordinarily scant independent investigation

conducted by the Dean, render the complaint fatally defective from the very start (App. B pp. 9-11).

**16. Dean Schmittmann's complaint was based on a "summary report", which was prepared by Kliemann at a time when Kliemann had no official responsibility for "evaluating" Pl. and could not be considered an evaluation report.**

Even if Kliemann's "performance summary" had been prepared in the ordinary course for use by the

University in evaluating or reviewing Pl.'s performance (and there is absolutely no evidence that it was),

it could not properly be considered an evaluation because it was prepared by Kliemann at a time when

he had no official responsibility for "evaluating" Pl.. The report was prepared and submitted on July

15, 2013, after Kliemann had already stepped down as the Chair of the Department of Mathematics.

(Testimony of Dean Schmittmann, Tr. p. 63) As such, any "evaluation" by him would have fallen

outside normal administration channels and should have not been treated as part of the "written

record" permitted for consideration by the Dean under 7.2.2.5.1. (App. B pp. 9-11)

**17. Dean Schmittmann and Provost Wickert did not conduct any independent investigation into the matters asserted by Kliemann in his report.**

The dubious inception of this proceeding is compounded by the fact that neither the College nor the

Provost has conducted any substantial independent investigation into the matters asserted by Kliemann

in his report. As discussed in App. B pp. 9-11, Dean Schmittmann based the complaint on a written

record consisting only of the Kliemann report and an appendix of materials selected and compiled

by him at the direction of his legal counsel, which included Carroll, Esbrook, and Overberg. Provost

Wickert forthrightly conceded he did not conduct an investigation. (Tr. p. 283) This combined with the

extraordinarily scant independent investigation conducted by the Dean, render the complaint fatally

defective from the very start. (App. B p. 10). Indeed, other than Kliemann himself, the University presented no witness who even purported to have first-hand knowledge of facts supporting the claims asserted by Kliemann. Pl.'s witnesses, who testified to specific and concrete facts as well as opinions based on first-hand observations, completely rebut the claims of Kliemann and, therefore, also rebut the claims made in the Dean's complaint. (App. B pp. 9-11, 19-24).

**18. Kliemann's "performance summary" was a collection of fabricated false evidence.**

The most fundamental document in the "performance summary" was the fabricated and forged Kliemann 2012 PTR. It also included the fabricated and forged 2009 and 2006 PTR, the fabricated 2004-2012 annual evaluations, and the fabricated Kliemann's students surveys (¶57).

**II.3 Defendants' judicial interference with the court proceedings and the administrative hearing to suppress the truth about Kliemann's 2012 PTR**

**19. Defs.' judicial interference with the administrative hearing.** The Department of Inspections and Appeals assigned ALJ Laura Lockard to preside over the administrative hearing on the University complaint. On May 1, 2014, ALJ Lockard sent to both parties a notice of hearing with related scheduling order. She scheduled the hearing to be from August 18-August 22, 2014. On August 12, 2014, ALJ Lockard ruled against ISU in a partial summary judgement filed by ISU. According to the scheduling order, the filing deadline of any dispositive motion was July 4, 2014. On the morning of August 13, 2014, ALJ Lockard sent an email to both parties: "I wanted to let you both know that, due to an unexpected family medical matter that I have to attend to next week, another ALJ from my office-Judge Carol Greta-will hold the hearing that is set to take place starting August 18." On the afternoon of August 13, 2014, Pl.'s Counsel wrote back to ALJ Lockard: "Just by way of further informal follow-up, in light of the fact that you already have some background with this file, I wonder if it would make sense to reschedule the hearing until a date you are again available?." Forty five minutes later, the University lawyer Assistant Attorney General Carroll, wrote back to both Pl.'s Counsel and ALJ Lockard, dictating basically that the matter will not be continued. It is clear from these exchanges, and the fact that ALJ Lockard spent more than three months and half on the case, that once ALJ Lockard

ruled against Defs., through Carroll and the Iowa Attorney General Thomas Miller, in concert with the Dept of Inspections and Appeals, interfered illegally with this proceeding and removed ALJ Lockard from the case and replaced her with an ALJ of their choice, ALJ Greta. Assistants Attorney General Carroll, Esbrook, and Attorney General Miller, in concert with the clerk of Story County Court, Tott, had previously interfered with the judicial proceedings in Pl.'s May 2014 trial. They had replaced Judge Finn by Judge Ruigh in Pl.'s state court case (¶21).

20. Defs. filed a motion in limine the week of the hearing, that is, more than a month after the deadline has past (¶19). They sought to overrule ALJ Lockard's ruling. ALJ Greta ruled in Defs.' favour. She overruled ALJ Lockard. She completely denied Pl. the right to use the real reasons why the whole process was initiated in the first place: retaliation based on his protected activities, including, filing with the Court, and for reporting various wrongful conduct by Defs. In doing so, she violated the rules set by ALJ Lockard at the beginning of this process.

21. **Defs.' judicial interference with the May 2014 court trial.** A few months before the May 2014 trial, Carroll and Esbrook, representing the defendants in Pl.'s April 2011 lawsuit, proposed to Pl.'s counsel to have Judge Ruigh replace Judge Finn to oversee the trial. Judge Finn had previously ruled against Defs. and was scheduled to oversee the trial. Pl.'s lawyer objected to this proposal. Despite this objection, Judge Finn was replaced by Judge Ruigh. Despite Pl.'s lawyer's objection, Carroll and Esbrook, in concert with the Clerk of Court of Story County, Tott, were able to replace Judge Finn by Judge Ruigh. A replacement of a judge at the request of Defs., and over Pl.'s objection, and only months before the trial, could not have been done appropriately without a motion and a hearing on the matter. No such motion had been advanced nor a hearing happened in this matter. Thereafter, Judge Ruigh committed multiple wrongs, including the almost four years remarkable delay to act on Pl.'s June 2014 post-trial motions. He ruled on them on March 9, 2018. Judge Ruigh's delay injured Pl. in many ways, including: (1) It deprived Pl. of his constitutional right to due process of law; (2) It deprived him of his right to a new trial; (3) It deprived him access to the appeal at a time when he was still employed and the appeal could have prevented the wrongful termination, thus, it obstructed

11

justice; And (4) by March 2018, any potential success of the appeal was heavily undermined by the wrongful termination and Defs.' defamation. Pl. was harmed as a consequence.

**II.4 The University complaint of unacceptable performance was fundamentally based on the 2012 post-tenure review report that was unequivocally proven to be fabricated and forged by the unrebutted testimony of Prof. Irv Hentzel.**

22. It is indisputable that the University complaint was based on Kliemann's 2012 purported post-tenure review report ("Kliemann 2012 PTR"). As reflected in §5.3.4 of the Faculty Handbook, the important purpose of post-tenure review is to provide regular peer review of the tenured faculty member's "performance in accordance with all position responsibility statements in effect during the period of the review in the areas of teaching, research/creative activities, extension/professional practice and institutional service." For these reasons, the College and the University rely heavily on the perceived importance of the 2012 post-tenure review. Thus, if legitimate, it would be the most recent post-tenure review report, and it would be viewed as providing some of the best evidence of Pl.'s then-current performance. Therefore, the University complaint was fundamentally based on Kliemann 2012 PTR.

23. In the final series of questions asked to LAS Dean Schmittmann by University counsel during the August 2014 hearing before ALJ Greta, Schmittmann was asked in detail about the purported findings and votes of Pl.'s peers as reported in the 2012 PTR. Emphasis was placed on the multiple unanimous 6-0 committee votes in the report, concluding Pl. performed "below expectations", and special attention was given to the portion of the report stating that Prof. Irv Hentzel had found Pl. to be deficient. (Tr. 77-80)

24. Significantly, in his testimony Kliemann characterized the 2012 PTR as the peer review "that triggered all this" (Tr. 354, emphasis supplied) (See, also, Kliemann's confirmation that he was referring to the 2012 PTR, at Tr. 356.) Kliemann emphasized the significance of the 2012 PTR as reflecting the "voice of the peers" of Pl. stating: *"[t]he idea is that whatever comes out of the peer review process in the department does not get translated through the Chair's voice, but gets directly to the Dean." (Tr. 354)*

25. As in the testimony of Schmittmann, Kliemann also emphasized the purported fact, reported in the 2012 PTR, of three separate unanimous 6-0 votes by the committee, finding Pl. to be performing

"below expectations". (Tr. 356-357)

**26.** Of course, the main problem with the University's heavy reliance on the 2012 PTR is that the record evidence shows, without contradiction, that the report is falsified, that no post-tenure review of Pl. was conducted in 2012, and the unanimous "votes" reported in the 2012 post-tenure review never happened.

**27.** The 2012 PTR reflects the names of the six members of the Math Dept's Tenured Faculty Review Committee in 2012. The only member of that committee who testified at the hearing in this matter was Prof. Irv Hentzel. At the hearing, Hentzel testified emphatically and repeatedly, that with respect to Pl., the only decision reached by the post-tenure review committee in 2012, was that the committee was not in a position to conduct a review in light of the ongoing litigation and Pl.'s unwillingness to cooperate with the review while the litigation was pending. (Tr. 523-524, 531, 540-541)

**28.** More important, as bearing upon the reliability and credibility of Kliemann's 2012 PTR, Hentzel testified repeatedly that he had never seen the 2012 PTR (even though it purports to be authored by him along with the other members of that committee) (Tr. 521-522, 531, 535, 538, 540)

**29.** Hentzel also testified, again repeatedly, that he did not cast votes as represented in the 2012 PTR, and that the matters purportedly put to a vote were not in fact voted upon by the committee. (Tr. 524, 531-532, 537, 540-541) He testified, for example:

> "At that time or at least the last most fresh meeting I've been with these people, he was suing the department, and we were not sure whether we were supposed to do anything before the court trial came up or not, and I - the way I remember it, they said he has not submitted anything, and we have nothing to go on. And in fact, it says that - something like that here. The teaching review does not include any teaching observations because Tidriri said 'I will not accept anyone to come and disrupt my teaching in my class.' And we sort of felt it was on hold until the court case was over." (Tr. 523-524)

and

> "The only vote I would have voted on was that we don't do anything because of the court case coming. I - or something to that effect, that we don't know anything. How can we give an opinion?" (Tr. 524)

and

> "The committee I was on, which I presume was 2012, they did not have anything to say about Tidriri because he had not submitted any - any - he didn't have a vitae. We didn't have anything." (Tr. 531)

13

**30.** Particularly significant in light of purported report's heavy reliance upon the discussion of student comments, Hentzel stated that he was always the committee member responsible for drafting the teaching evaluation in post-tenure review reports (Tr. 522-523), and he did not have a role in preparing the purported 2012 PTR (Tr. 523), nor did he prepare the discussion of Pl.'s teaching set forth in that document (Tr. 541). He testified the discussion of teaching in the 2012 PTR was "not written up the way I usually write them up" (Tr. 522), noting, for instance, that he did not label student comments separately as was done in the 2012 PTR (Tr. 523).

**31.** Prof. Hentzel testified under oath that although he is shown as a signatory to the document,(1) he had never seen the "report", (2) the purported votes recited in the "report" did not occur; (3) the Committee did not make the decisions reflected in the "report"; (4) the Committee actually decided it could not conduct a post-tenure review because of the pending litigation and Pl.'s related refusal to participate during the pendency of the litigation; and (5) he did not prepare the teaching evaluation in the "report" despite the fact that he would have been the person responsible for preparing that section if a review had been conducted.

**32.** In a remarkably unwarranted disservice to a long-standing member of ISU community, ALJ Greta entered a specific finding that Prof. Hentzel's testimony was not credible. (Proposed Decision 19) In support for her opinion, she noted: "Dr Hentzel was visibly uncomfortable and fidgety, but more importantly, his testimony was inconsistent with other testimony that is accepted by this tribunal as credible." (Proposed Decision 19) ALJ Greta added "more importantly" her observation that Hentzel's testimony is inconsistent with other testimony she accepts. The difficulty with this proposition is that there was no other testimony in the entire proceeding on the subject of whether the 2012 PTR was authentic, whether it was factual, whether the votes reflected were taken, or whether its issuance was in fact authorized by any or all of its purported authors. Thus, if a reliability issue is presented on this issue, it rests not with Hentzel's testimony, but with the patently erroneous finding of Greta, who intentionally impugned a witness' credibility based on nonexistent testimony of other witnesses.

**33.** Toward the end of Professor Hentzel's testimony, ALJ Greta and University counsel Carroll asked for and received Professor Hentzel's permission to allow the University counsel to search his computer for any evidence that he received the 2012 post-tenure review at any time before the day of his testimony. (Tr. pp. 549-552). University counsel stated on the record that he would have such a search conducted. (Tr. p. 552) Initially, Carroll and DeArmond asked ALJ Greta if they can go with Hentzel to his office to check his computer for any sign of Kliemann's 2012 PTR. <u>When Pl.'s counsel insisted to ALJ Greta that if they go, he will go with them. Carroll and DeArmond backed off.</u> The hearing continued into the following afternoon and no evidence was ever produced purporting to show that Professor Hentzel had ever received the purported 2012 post-tenure review prior to seeing it on the day of his testimony. Moreover, no other member of the 2012 Tenured Faculty Review Committee, and no other witness of any stripe, was ever brought forward to rebut in any respect, or even to address, any aspect of Professor Hentzel's testimony.

**II.5 New evidence discovered after the administrative hearing showed unequivocally that the 2012 post-tenure review of Pl. was never conducted.**

**34.** After the hearing, Pl. met individually with other members of the 2012 Dept Tenured Faculty Review Committee and asked them in recorded conversations whether they have ever conducted any review of Pl. in 2012. Each one of them told him that they have never conducted, prepared, written, voted on, or signed any review of Pl. in 2012. Thus, they confirmed Hentzel's testimony above. The transcript of parts of the recordings of Pl. with two members of the Committee: Zhijun Wu and Yiu-Tung Poon, follows. The transcript; See below, proves that the University's 2012 post-tenure review report of Pl. was fabricated and forged. **The 2012 post-tenure review was never conducted.**

> *"Pl.: What I know from two 2000, was it 2012, you were on the PTR Committee?*
> *Wu: Who?*
> *Pl.: You.*
> *Wu: For who?*
> *Pl.: No, No, No. Just the post-tenure review committee. You were, right?*
> *Wu: Yes.*
> *Pl.: But you were not involved in my case.*
> *Wu: No.*

*Pl.: You were never involved in it.*

*Wu: No.*

*Pl.: Yeah. Ok. So, so, I think what what I heard from some people there, is that you vote not to do anything because of the legal procedures, legal proceedings.*

*Wu: I didn't involve anything.*

*Pl.: You didn't ever vote on anything?*

*Wu: No.*

*...*

*Pl.: So none of the committee members has ever been involved involved in that?*

*Wu: No.*

*Pl.: Ok. Yeah. Because I thought that they just talked about the fact that there is this legal thing and therefore you can't do anything because of the legal case. So basically that is what happened. You never actually, that post tenure review committee never actually looked at my case.*

*Wu: No.*

*...*

*Wu: But we never we were not involved. The whole committee, I don't remember actually get involved in this, or voting or something like that.*

*Pl.: But you were never involved?*

*Wu: No.*

*Pl.: Yes, yeah, OK. So, yeah, OK.*

*Wu: At that time it seems like a critical. People just don't*

*Pl.: don't want to touch it.*

*Wu: Yes.*

*Pl.: That's, that is what I know. I know that. You and Hentzel and Hogben, D'Allessandro.*

*Wu: Yeah, yeah.*

*Pl.: None of these people was involved?*

*Wu: No.*

*Pl.: And Poon too. Poon was not involved?*

*Wu: No. "*

The following is a portion of the pertinent conversation with Y.-T. Poon.

*"Pl.: Did you vote on my case?*

*Poon: No. We mentioned your name but we realized that we don't have information on you, that we can't do anything. I mean.*

*Pl.: Yeah. So that is what what I know from others they already, I know that your committee did not do anything because because first of all there are legal issues*

*Poon: and also because we don't have any information.*

*Pl.: And then there, second, I refused to provide any information.*

*Poon: Yeah, yeah.*

*Pl.: Therefore you can't evaluate somebody when they did not provide any information.*

*Poon: Yeah, yeah. "*

35. Prof. Hentzel's testimony in August 2014 hearing and Profs. Poon and Wu above prove that the

University 2012 post-tenure review report was fabricated: (1) they have never seen the "report";

(2) they have never signed this "report"; (3) the purported votes recited in the report did not occur; (4)

the committee did not make the decisions reflected in the report; (5) the committee actually decided

it could not conduct a post-tenure review because of the pending litigation and Pl. related refusal to

participate during the pendency of the litigation.

**III. The hearing testimonies of witnesses with first-hand knowledge of Pl.'s performance showed that, without the use of Kliemann's 2012 PTR, the University would not have prevailed in the administrative hearing**

**36.** During the review period, Pl. had a NSF award from the National Science Foundation with funding

of up to two PhD students, he was serving as an associate editor for SIAM J. Numerical Analysis,

the premier journal in the world in its field, he was a member of a panel review in Washington,

D.C. for the Federal Dept of Energy, and he was working on several research projects, some of which

were completed. Also, Pl.'s performance was judged good in all aspects of his employment by the

Faculty Senate Committee on Appeals ("FSCA") in 2009 after he complained to the FSCA about Defs.'

retaliation, particularly with respect to annual salary raises and Defs.' blocking of Pl. expenditures and

his summer salary from his NSF award (App. A ¶¶43-44).

**37.** In the August 2014 hearing, the only witnesses who testified and had first-hand knowledge of Pl.'s

performance were: Professors Kliemann, Hentzel, (Steven) Hou, and (Eric) Carlen (App. B pp. 19-24).

Kliemann, the only University witness with first-hand knowledge, based his entire testimony on his

Kliemann's 2012 PTR that was shown to be fabricated and forged (¶¶22-33, 34-53).

**38.** Professor Hentzel, a long-time tenured full Professor of Mathematics and a member of the depart-

ment's post-tenure review committee at all relevant times, testified to first-hand familiarity with Pl.'s

performance. In addition to completely disavowing the fabricated 2012 post-tenure review relied upon

by Kliemann and Dean Schmittmann, he also testified about Pl.'s very visible and laudable engagement

with the students. He testified to the fact the students were routinely in line waiting to meet with Pl.

during office hours. Professor Hentzel stated that this was a positive thing indicating that students

liked Professor Tidriri. Professor Hentzel further stated that when other faculty generate that kind

of attention from their students, it is "talked up as being the greatest thing ever." (Tr. pp. 528-529)

Perhaps most important, given his role on the tenured faculty review committee, Professor Hentzel was

firm and definite in stating that the "environment" was the primary cause of Pl.'s difficulties, and that

17

"there's nothing wrong with him and - except he was in a bad place." (Tr. p. 527).

**39.** Professor Steven Hou, a full Professor of Mathematics since 2000, also testified to first-hand knowledge and observation regarding Pl.'s performance in the three areas of service, research and teaching. As to service, he confirmed Pl.'s recent service on the Dept Awards Committee (Tr. pp. 653-656). Professor Hou also stated that Pl.'s failure to be elected to serve on other committees is attributable to "politics in the department" and he described those departmental politics as "very hostile" to Pl.. (Tr. pp. 659-661) Hou stated that the hostility he observed was not attributable to any wrongdoing of Pl.. (Tr. p. 661)

**40.** On the question of research, Hou testified that during the relevant period, Pl. has been engaged in *very important* research that was at the time under review by a peer-reviewed journal. (Tr. 678-679) He testified that the research involved a **long-standing problem in mathematics** and that the results of that research would have important applications in the area of fluid mechanics. (Tr. pp. 680-681) Hou stated that Pl.'s research is "valuable to the entire math community." (Tr. p. 681)

**41.** Professor Hou also presented testimony regarding Pl.'s teaching. He affirmed Pl.'s commitment to teaching and stated that in their department Pl. is "probably among one of a small number who teach serious mathematics and a demanding standard." (Tr. p. 671) Consistent with the testimony of Professor Hentzel, Professor Hou further observed that Tidriri is seen by people in the department as spending more time "helping students" then most other professors. (Tr. p. 672) Professor Hou also testified that based on his review of Pl.'s student evaluations from 2011-2013, "he's clearly, clearly a satisfactory teacher if we were to purely rely on the student evaluations." (Tr. pp. 667-668) Hou stated that he would "absolutely not" expect student evaluations such as those to be a basis for an effort to have a faculty member dismissed and further asserted that such an effort in this case "almost demonstrates malicious intent." (Tr. pp. 668-669)

**42.** On the issue of Pl.'s performance in the area of research, additional testimony was received from Dr. Eric Carlen, Distinguished Professor of Mathematics at Rutgers University and editor of the Journal of Statistical Physics. (Tr. pp. 835-861) Professor Carlen provided detailed testimony about the important

18

research that Pl. has been conducting in recent years and also about a paper that Pl. has submitted

for publication, during the relevant period of 2008-2013, to the Journal of Statistical Physics, a highly

regarded peer-reviewed journal. (Tr. pp. 843-851) Carlen explained that the paper is "still under review

and revision" and has been subjected to initial refereeing. (Tr. p. 844) He further stated that Pl. "is

preparing the final revision." (Tr. p. 845) Carlen characterized the paper as "substantial" and one that

"laid the groundwork for solving an important problem in hydrodynamics." (Tr. p. 843) Asked what

he meant by the word "substantial" in that context, Carlen responded that he referred both to the

"impact of the results" of the paper and to its length. (Tr. p. 846) He described the paper as involving

a "very novel geometric method" for solving a significant "open problem" in mathematics (Tr. p. 848).

43. Pl.'s work in Carlen and Hou's testimonies included, a paper that was published online in 2015

and in paper form in 2016 in the Journal of Statistical Physics and a second, whose publication was

delayed due to Defs.' wrongful conduct and defamation, and was finally published on December 17,

2021 in the peer-reviewed international journal, the Australian Journal of Mathematical Analysis and

Applications.

44. Significantly, as with Professor Hou's testimony, the testimony of Professor Carlen was undisputed.

No witness or document has been presented or produced that even calls these testimonies into question.

Nonetheless, and in the face of these testimonies, ALJ Greta remarkably stated in her proposed decision

that "Dr. Carlen's testimony established nothing more than that nothing authored by Dr. Tidriri has

been published in the Journal of Statistical Physics since 2004 (proposed decision p. 15) and that

she concluded Dr. Tidriri has not been working on any research projects during the review period

(proposed decision p. 20). Such patently erroneous findings and conclusions fall far short of the fair and

just evaluation of evidence to which Pl. is entitled as a matter of law.

45. Carlen, Hentzel, Hou, and Pl.'s testimonies proved again that the 2012 PTR was fabricated. No

witness or document has been presented or produced that even calls into question these four witnesses'

undisputed testimonies including, three disinterested scholars. Yet, ALJ Greta completely disregarded

them as not credible and falsely concluded that "ISU showed by a preponderance of the evidence that

Pl. has not been working on any research projects that can be credited to him during the review period." (proposed decision p. 20). (App. B ¶¶19-24).

**46.**   The only first-hand evidence presented by the University in its efforts to prove unacceptable performance is the evidence and testimony provided by Professor Kliemann, an individual with an obvious and significant conflict of interest, who relied upon his fabricated, forged, and discredited 2012 post-tenure review. All of the other first-hand testimony pertaining to Pl.'s performance undermined the University's case and supported Pl.'s claim that he was performing acceptably.

**IV. The University, its lawyers, and ALJ Greta's corrupt activities to suppress the truth about the discovered fact that Kliemann's 2012 PTR was fabricated and forged.**

**47.** None of the material findings and conclusions adverse to Pl. made and reached by ALJ Greta in her proposed decision are supported by the evidence, by the applicable University rules or by State or Federal law.

**48.** ALJ Greta participated in Defs.' corrupt activities to suppress the truth concerning the fabricated and forged Kliemann's 2012 PTR and to suppress undisputed evidence and testimonies supplied by Pl. and three disinterested scholars (¶¶22-46). Greta's statement: "Dr Hentzel was visibly uncomfortable and fidgety, but more importantly, his testimony was inconsistent with other testimony that is accepted by this tribunal as credible." (proposed decision 19)

Since ALJ Greta was from the beginning, prejudicial against Pl. (¶32), she was faced with a dilemma: (1) Prof. Hentzel's unrebutted testimony showed Kliemann's 2012 PTR was fabricated and forged; (2) The only University witness with first-hand knowledge of Pl.'s performance was Kliemann who was the author of his fabricated 2012 PTR; and (3) Pl. and three desinterested scholars' undisputed testimonies proved Pl.'s performance was satisfactory. In order to side with the University, she had to make the fabricated and forged Kliemann's 2012 PTR look valid. Thus, she had only one choice: attack the credibility of the Pl. and the three desinterested scholars. This is exactly why the University, Iowa Attorney General Office, and the Dept of Inspections and Appeals removed ALJ Lockard and replaced her with ALJ Greta (¶¶19-21).

49. After it was discovered that Klieamann's 2012 PTR, upon which the University complaint against Pl. was fundamentally based, was fabricated and forged, the University and its lawyers had Dept Chair Bergman form a tenured faculty review committee to conduct a new post tenure review of Pl.. The members of this committee were defendants in Pl.'s previous internal and external complaints. It included in particular, Sacks, Bergman, and Johnston. Pl. objected to any review by those that were defendants in his previous internal complaints and his complaints with the EEOC, the ICRC, and the Court.

50. **Defendants' defamation of Pl. to suppress the truth about Kliemann's 2012 PTR.** Immediately after ALJ Greta issued her proposed decision induced and procured by Defs.' fabricated and forged Kliemann's 2012 PTR, Defs. leaked ALJ Greta's report to The Ames Tribune, The Des Moines Register, and the Chronicle of Higher Education, and through The Associated Press, and to other newspapers nationwide. Additionally, the University published the report and other defamatory material on its websites.

**V. The University, the FSCA, the Regents, and their lawyers' corrupt activities to suppress the truth about the discovered fact that Kliemann's 2012 PTR was fabricated and forged.**

**V.1 Plaintiff's November 17, 2014 requests for leave to present fundamental new evidence and to present oral argument to ISU President Leath were denied.**

51. On November 17, 2014 Pl. appealed ALJ Greta's proposed decision for the termination of Pl.'s tenured professorship at ISU, by filing his timely notice of appeal with ISU President Leath pursuant to Iowa administrative Code Rule 681.20.26(3). In that notice, he also asked for leave to present additional evidence under Rule 681.20.26(4) and in support of this request stated:

(1) Since the hearing in this matter, new evidence has been discovered further establishing that the purported 2012 post-tenure review report was falsified.

(2) Since the hearing in this matter, new evidence has been discovered further establishing that the purported 2012 post-tenure review of Pl. was not conducted.

(3) Since the hearing in this matter, new evidence has been discovered further establishing that Pl. has performed acceptably including in the areas of service and research.

Pl. also asked for leave to present oral argument. Both requests were denied by ISU President Leath by letter dated December 3, 2014. On January 5, 2015 Pl. filed his timely brief in support of his appeal.

**V.2 Pl.'s March 5, 2015 requests for leave to present fundamental new evidence and to present oral argument to the Regents were denied.**

**52.** On March 5, 2015, Pl. appealed ISU President Leath Decision, by filing his timely notice of appeal with the Regents pursuant to Iowa administrative Code Rule 681.20.26(3). In that notice, he also asked for leave to present additional evidence under Rule 681.20.26(4) and in support of this request stated:

(1) Since the hearing in this matter, new evidence has been discovered further establishing that the purported 2012 post-tenure review report was falsified.

(2) Since the hearing in this matter, new evidence has been discovered further establishing that the purported 2012 post-tenure review of Pl. was not conducted.

(3) Since the hearing in this mater, new evidence has been discovered further establishing that Pl. has performed acceptably including in the areas of service and research.

Pl. also asked for leave to present oral argument. Both requests were denied by the Regents. On April 14, 2015 Pl. filed his timely brief in support of his appeal to the Regents.

**V.3 The obstruction of Pl.'s appeals.**

**53.** Freeman and Martin of the FSCA, LAS Dean Schmittmann, Provost Wickert, ISU President Leath, and the Regents, and their lawyers Carroll, Esbrook, DeArmond, and Overberg, refused to review Pl.'s appeals. The objective was to suppress the truth about the fact that Kliemann's 2012 PTR was fabricated and forged.

**VI. The University 2009 post tenure review report of Plaintiff used in the 2011-2014 court proceedings and in the 2012-2014 administrative proceedings was fabricated and forged.**

**54.** Kliemann, Maddux, and the University claimed that the 2009 post tenure review report of Pl. was prepared, written, and signed by the 2009 Department Tenured Faculty Review Committee. The following proved that this report was fabricated and forged.

(1) Pl. had not been notified or informed of any review of him in Spring or Fall of 2009 by Kliemann

or anyone else. Pl. was not aware that any review of him was conducted in Spring or Fall of 2009 by the Dept. In fact, Pl. repeatedly objected to any review of him conducted by individuals who have major conflict of interest with respect to him because they were defendants in the internal and external complaints he filed.

(2) A review of Pl. for the five years period 2004-2008 was conducted by the FSCA in Spring 2009 (¶7, App. A). The Ad-Hoc Committee, which was formed of independent faculty that did the investigation, found that Pl.'s performance in all areas of responsibility was good. They stressed that Pl.'s NSF award proved the high quality and caliber of Pl.'s research. They also studied the students surveys that were sent to them by the Dept Administration and found that Pl.'s teaching was good.

(3) In 2008, Pl. filed a complaint against Maddux for constantly harassing and stalking Pl., and creating a hostile environment for students who come to Pl.'s office for help about the courses Pl. was teaching. Maddux's harassment and stalking of Pl. was so pervasive and offensive to the point that one student, in one of Pl.'s classes in 2008, was so afraid of Maddux. While the Pl. was helping this student in his office, she noticed that someone a few feet away from the right side of the office door was starring at her. The student thought that he was stalking her, so she let Pl. know of his presence there. Then Pl. went out and found Maddux starring at the student. Pl. then assured that student that Maddux was stalking Pl. not her, and that she did not have to be afraid.

(4) It was only after Pl. received Discovery Documents in 2014, that he learned that a fabricated post-tenure review was done in Spring 2009 with Maddux designated as the chair of the review committee.

(5) Kliemann and Maddux both knew that in October 2008, Pl. filed an appeal with the FSCA against the Dept Administration regarding its retaliation against Pl. concerning the annual evaluations, the blocking of Pl.'s NSF grant, the blocking of his summer salary, and the 0% annual salary raises, and other actions. The Ad-Hoc Committee of the FSCA wrote its report in Spring 2009. Kliemann and Maddux both knew about the findings of this Ad-Hoc Committee. Because of these findings, they did not write any post-tenure review in Spring 2009 since the contradiction would be clear. But, the Discovery Documents obtained in 2012-2014 included a 2009 post-tenure review report that was

23

fabricated and back-dated.

(6) In his report, Maddux committed a series of frauds that together with Points (1)-(5) above, showed that Maddux's report was not written until 2012 or later. That is, Maddux 2009 report is fabricated. Maddux wrote "The Committee can find no evidence of scholarly activity or service to the profession". As explained in Point (5) above, Kliemann and Maddux knew that Pl. had had a continuous history of grants and awards from major and prestigious federal funding agencies. In particular, during the period supposedly covered by the review (2006-2008), Pl. had an NSF grant. Pl. was an Associate Editor from 2004 to 2009 for SIAM Journal on Numerical Analysis, the premier journal in the field of Numerical analysis in the world. Pl. was also a member of a panel review in Washington, D.C. for the Federal Dept of Energy.

Maddux also wrote in his fabricated report "Dr. Tidriri contributes almost nothing to the mission of Iowa State". It seems that one of the central roles of ISU is teaching. In fact, as far as the University was concerned, the Mathematics Dept was a service Dept, which meant that the central mission of the Dept was teaching. In a continuous retaliation and discrimination against Pl., the Dept and University, including Peters, Johnston, Kliemann, Bergmann, and Davidson, had been assigning to Pl. much higher teaching loads than other regular tenured faculty. In fact, Discovery Documents showed that from 2008-2014, Pl.'s teaching load per academic year was about twice the average teaching load of the other regular faculty in the Dept. This meant Pl. contributed far more to the mission of ISU than any other regular faculty of the Math Dept, including Kliemann and Maddux.

(7) Points (1)-(6) showed that Kliemann and Maddux's 2009 post-tenure review report was fabricated and forged.

(8) Kliemann and Maddux's 2009 post-tenure review was part of Kliemann's "performance summary", which according to Kliemann's own testimony during the August 2014 administrative hearing, was prepared under the direction of the University Lawyers for litigation purposes. Kliemann was a defendant in Pl.'s 2011 lawsuit and Maddux was a defendant in internal and external complaints.

**VII. The University 2006 post tenure review report of Pl. used in the 2011-2014 court**

proceedings and in the 2012-2014 administrative proceedings was fabricated and forged.

55. Discovery Documents showed in particular, that there are two completely different versions of the 2006 post-tenure review of Pl.. One that was given to Pl. in Fall 2006 and a second completely different one that was fabricated and forged years later after Pl. filed complaints with the EEOC and ICRC. The University used this fabricated and forged PTR in the 2011-2014 court proceedings and in the 2012-2014 administrative proceedings.

**VIII. The University annual evaluations of Pl. for 2004-2012 used in the 2011-2014 court proceedings and in the 2012-2014 administrative proceedings were fabricated.**

56. Discovery Documents showed that there were two completely different versions of each of the five annual reviews for 2008-2012 of Pl. by Kliemann when he was the Dept Chair. The ones Kliemann included in the University complaint and the Court proceedings, and used in the August 2014 administrative hearing and in the 2011-2014 court proceedings, were completely fabricated after he was no longer a chair in July 2013. There are two versions of Dept Chair Peters' evaluations of Pl. for 2004 and 2005. The original ones he gave Pl. weeks after he wrote them and the fabricated ones written after PL. filed his first complaints with LAS Dean Whiteford in 2006 and with the FSCA in 2007. Dept Chair Peters' evaluations of Pl. for 2006 and 2007 were retaliatory and based on false claims on Pl.'s performance after Pl. filed complaints against Peters. Peters' fabricated 2004-2007 annual evaluations were used in the 2011-2014 court proceedings and in the 2012-2014 administrative proceedings.

**IX. The University students entries from Kliemann's students surveys of classes Pl. taught, and that were used in the 2011-2014 court proceedings, and in the 2012-2014 administrative proceedings, were fabricated.**

57. Pl. proved in his responses to the University complaint in 2013, that the students' entries from students' surveys were altered, and/or fabricated. It was proved that Kliemann's summary of performance consisted of fabricated false evidence including, the fabricated and forged Kliemann's 2012 PTR, the fabricated and forged Kliemann and Maddux 2009 PTR, the fabricated and forged Peters' 2006 PTR, and the fabricated Peters' 2004-2007 annual evaluations, and the fabricated Kliemann's 2008-2012 annual evaluations. Therefore, all of the students numbers and comments were fabricated.

**X. Without the use of the fabricated false evidence, the University would not have prevailed in the August 2014 administrative hearing.**

**58.** The Defs. prepared and presented the following false evidence to induce and procure the decision in the August 2014 administrative hearing: (1) The fabricated and forged Kliemann's 2012 PTR; (2) The fabricated and forged Kliemann's 2009 PTR; (3) The fabricated and forged Peters second 2006 PTR; (4) The fabricated Peters' annual evaluations for 2004-2007; (5) the fabricated Kliemann's annual evaluations for 2008-2012, and (6) the fabricated Kliemann's students surveys. During the August 2014 hearing, the fabricated and forged Kliemann's 2012 PTR was used in a fundamental way to discredit Pl. in all aspects of his professional responsibilities and terminate Pl.'s tenured professorship. The evidence Pl. prepared and presented showed that, without the use of Defs.' fabricated false evidence, the University would not have prevailed (¶¶22-46).

**XI. In their responses to Pl.'s complaints with the FSCA, the University, the Regents, and the EEOC and ICRC, Defendants used fabricated false evidence.**

**59. 2007 complaints with the FSCA, the Provost, and the Regents:** After the University illegally blocked Pl.'s promotion from tenured associate professor to tenured full professor, Pl. appealed to the FSCA, the Provost, and the Regents. Discovery Documents and the findings of the FSCA showed that:

(1) Pl. was subjected to retaliation, defamation, and a hostile work environment (App. A).

(2) Defs. fabricated multiple documents years after they illegally suspended Pl.'s promotion case (App. A)

(3) Defs.' retaliation and defamation interfered with Pl.'s employment opportunities. This included a position of full professor at Georgia Institute of Technology ("Georgia Tech"). During Fall 2004 and Spring 2005, Pl. was considered the top candidate for a position of full professor in the Dept of Mathematics at Georgia Tech. However, because of Defs.' defamation and the interference of Levine and Sacks, and their defamation of Pl. to some members of the Math Dept at Georgia Tech, Pl.'s hiring did not materialise. In fact, Pl. was so confident of getting that job after his visit to Georgia Tech and meeting with multiple members of the Math Dept there, that his wife applied and obtained a licence

to practice medicine in the State of Georgia (App. A).

**2008 complaints with the FSCA and the EEOC and ICRC:** In February 2008, Pl. filed a complaint with the EEOC and ICRC due to the University's retaliation against him for filing complaints with the FSCA and the Regents in 2007 (App. A). In October 2008, Pl. filed a second complaint with the FSCA regarding the University's retaliation against him for filing complaints with the FSCA and the Regents in 2007 and the EEOC and ICRC in February 2008. This complaint concerned ongoing retaliatory actions by some defendants, including but not limited to, interfering with Pl.'s federal National Science Foundation award and Pl.'s summer salary, failing to give Pl. at least a minimum salary raise as required by the ISU Governance Document, and negative and fraudulent annual evaluations.

The finding of the FSCA included: (1) Dept Chair Peters was retaliating and discriminating against Pl. and another faculty Steven Hou, who testified on Pl.'s behalf; (2) The students' teaching surveys for the five years that included Spring 2008, showed that Pl.'s teaching was good; (3) Pl.'s research was excellent; (3) Peters used arbitrary and capricious criteria in his annual evaluations of Pl.; and (4) They wrote that they did not understand why he was acting the way he acted.

The FSCA investigation showed that LAS Dean Whiteford, Associate Provost Carlson, and Provost Hoffman denied that they were involved in the blocking and suspension of expenditures from Pl.'s NSF grant. They also denied that the University blocked Pl.'s summer salary. Discovery Documents showed that Whiteford, Carlson, and Hoffman were directly involved in the blocking and suspension of expenditures from Pl.'s NSF grant and his summer salary. Also, FSCA Appeal Documents provide evidence that the University blocked Pl.'s summer salary.

In December 2008, Pl. filed a second complaint with the EEOC and ICRC regarding the University's retaliation against him for filing complaints with the FSCA and the Regents in 2007 and the EEOC and ICRC in February 2008 (App. A). It included the issues raised in his 2008 FSCA complaint; See above.

Discovery Documents showed that the responses of Levine, Luecke, Peters, Sacks, Whiteford, Carlson, and Hoffman to the above FSCA and EEOC and ICRC complaints, were completely different and in

fact, contradictory. The following two examples illustrate such deceit:

(1) In their response to the EEOC and ICRC, they admitted they did block and suspend expenditures from Pl.'s NSF award and, did block and suspend his summer salary, because he did not fill the performance and growth form. While in their response to the FSCA, they claimed they did not block or suspend expenditures from his NSF award, nor did they block or suspend his summer salary.

(2) In their response to the EEOC and ICRC, Peters, Whiteford, Carlson, Hoffman, and Overberg assigned 0% annual salary raises because of purported unsatisfactory performance. While in their response to the FSCA, Whiteford, Carlson, and Hoffman denied their involvement in the decision regarding the 0% annual salary raises. Again, these are completely opposite answers.

**2012 complaint with the FSCA:** In September 2012, Pl. filed with the FSCA, a timely appeal on the fraudulent content of Kliemann's 2012 PTR. The FSCA refused to review the appeal in violation of the Faculty Handbook rules and procedures (¶8).

**2012 complaints with the University and the Regents:** Since the FSCA refused to review Pl.'s timely appeal, Pl. filed in October respectively November, December 2012, and January 2013 a timely appeal with LAS Dean Schmittmann respectively Provost Wickert, ISU president Leath, and the Regents, on the fraudulent content of Kliemann's 2012 PTR. They all refused to review Pl.'s timely appeal in violation of the Faculty Handbook rules and procedures (¶9)

**2013 complaints with the University and the Regents:** In September 2013 respectively October, and November of 2013, Pl. filed a timely appeal with Provost Wickert respectively ISU president Leath, and the Regents, on Schmittmann's filing of unacceptable performance complaint against Pl., which was based on the fraudulent content of Kliemann's 2012 PTR. They refused to review the appeal (¶9). Prior to the August 2014 administrative hearing, Pl. did not know that Kliemann's 2012 PTR was a completely fabricated and forged document (¶¶22-46).

**XII. Defendants subjected Pl. to increasing retaliation and hostile work environment after he filed his first complaints with LAS Dean Whiteford in 2006, the FSCA in 2007 and 2008, and the EEOC and ICRC in 2008 and 2009, and the court in 2011.**

**60.** The wrongful, retaliatory conduct, the harassment, and the hostile work environment by Defs.

directed at the Pl. after he filed his complaints have been continuing and repeated and included, but not limited to (App. A), (1) interference with and impeding of Pl.'s promotion to full professor; (2) improperly terminating Pl.'s federal grant from the Air Force Office of Scientific Research and the Department of Defense; (3) failure to give the Pl. appropriate annual salary raises; (4) making improper and false negative evaluations of the Pl.'s annual performance; (5) blocking expenditures from Pl.'s federal National Science Foundation Award, which effectively blocked or impeded Pl.'s ability to hire graduate students, perform professional work, engage in professional travel and participation in conferences, obtain appropriate equipment and software for his research, and damaging his professional relationships, his intellectual property and academic freedom; (6) blocking, improperly threatening to block, and improperly delaying, Pl.'s summer salary; (7) improperly preventing Pl. from teaching graduate courses and advanced undergraduate courses; (8) representing the Pl. in a false light, invasion of the Pl.'s privacy; isolating the Pl.; actions or omissions intended to interfere with the Pl.'s work and/or research; and interference with his contractual relationships or prospective business advantage; (9) wrongful dissemination or acquisition of the Pl.'s intellectual property; (10) fabrication of false evidence; (11) improper threats against the Pl.'s tenure; (12) failure to provide appropriate equipment and/or improper delay in providing appropriate equipment for Pl. to conduct work and research; (13) improperly terminating Pl.'s federal National Science Foundation grant; (14) implementation of new discriminatory policies to retaliate against the plaintiff and to ultimately remove him from the faculty at ISU; (15) fabrication of false post-tenure reviews of Pl.; (16) filing of unacceptable performance complaint based on the fabricated and forged Kliemann 2012 post-tenure review report; (17) terminating Pl.'s tenured professorship based on fabricated false evidence, including the fabricated and forged Kliemann 2012 post-tenure review report.

## XIII. Defendants' extensive use of fabricated false evidence in the 2011-2014 Court Proceedings and the March 9, 2018 post-trial motions ruling.

**61.** Discovery Documents showed:

(1) The existence of the fabricated documents listed in ¶¶35,54-57 above.

(2) Fraudulent duplication of documents in Pl.'s personnel files (App. A).

(2.1) Three different versions of the promotion file. The Dept Administration refused to process the promotion and to put together the promotion file. There was never any promotion file in 2004. Therefore, all three different versions of the promotion file are completely fabricated documents.

(2.2) There are two annual evaluations by Peters for 2004: one positive and one negative. The positive one is the one that was handed to Pl. around August 2005. Discovery Documents showed that the second one was fabricated more than a year later.

(2.3) Two entirely opposite Teaching reports were included in the fabricated 2004 promotion files. A Teaching report written in 2004 was positive, while the second Teaching report was negative and backdated to 2004.

(2.4) Three different versions of a summary of comments in Pl.'s fabricated 2004 promotion files that were supposed to represent the same document. The first was the claimed original. The second was fabricated by the University to cover up its misconduct after Pl. filed a complaint in 2007 with the FSCA. The third was another fabricated version by the University to cover up its misconduct after Pl.'s filed a lawsuit with the court in April 2011. Defs. admitted in these summary of comments that Pl.'s research was excellent.

(2.5) There are two completely different versions of the 2006 post-tenure review. One that was handed to Pl. back then, and a second completely different one that was fabricated at least 5 years later.

(3) Tampering with dating of documents in Pl.'s personnel files (App. A).

(3.1) All of the annual evaluations beginning with 2006, when Pl. filed the first complaint, are based on arbitrary and capricious criteria, deceptions, and fabrications. Several of these were completely fabricated.

(3.2) In support of Pl.'s promotion, two external review letters were received and stamp dated by the Dept Administration with dates that are months after they were actually received in order to conceal the actual dates of reception. The date on a third external review was removed by the Dept Administration

in order to conceal the actual date of reception. Pl.'s promotion file was deemed incomplete due to the reputed absence of these letters before the deadline.

(3.3) Two reputed summary reports of the non existent 2004 promotion file were fabricated many years after 2004 by the University and backdated 2004. There was no summary report by the end of 2004 when the University refused to process the promotion.

(3.4) In 2004 there was no Chair recommendation letter in regard to Pl.'s promotion. However, many years later a Chair recommendation letter appeared in Pl.'s personnel file and was backdated 2004.

## XIV. The defendants who participated individually and/or in concert to deliberately fabricate false evidence and/or suppress the truth about this fabricated false evidence.

**62.** ¶¶22-35 show that Kliemann deliberately fabricated his Kliemann's 2012 PTR. App. B pp. 9-11 show that Kliemann did so at the suggestion and direction of his legal counsel, which consisted of Carroll, DeArmond, Esbrook, and Overberg. Moreover, ¶33 shows that these lawyers knew that Kliemann's 2012 PTR was fabricated and forged. ¶¶8, 19-21, and 33 show that these lawyers were actively involved in the corrupt activities to suppress the truth about the fabricated and forged Kliemann's 2012 PTR. App. A ¶58-60, and 65-66 show that Freeman and Martin of the FSCA, Associate Provost Bratsch-Prince, Provost Wickert, LAS Dean Schmittmann, ISU President Leath, and the members of the Board of Regents participated in the corrupt activities to suppress the truth about the fabricated and forged Kliemann's 2012 PTR. App. A ¶¶74-81 show that the members of the FRB: Joan Cunnick, Mark Miller, and Dennis Vigil, participated in the corrupt activities to suppress the truth about the fabricated and forged Kliemann's 2012 PTR. This shows that these defendants ("Defendants I") reached a unity of purpose, a common design and understanding, and meeting of minds to suppress the truth about the fabricated and forged Kliemann's 2012 PTR, and consequently, to terminate Pl.'s tenured professorship. The members of the 2012 Math Dept Tenured Faculty Review Committee, D'Alessandro, Hogben, Poon, and Wu ("Defendants II") Knew after Pl. met with them, and after Defendants I published defamatory material against Pl. through the media, and after Pl. sent an email to Math dept faculty about the fabricated and forged Kliemann's 2012 PTR, that Defendants I falsely claimed that Defendants II

conducted a PTR review of Pl., prepared, wrote, and signed Kliemann's 2012 PTR. Thus, Defendants II knew that Kliemann's 2012 PTR was fabricated and forged, yet they kept silent. Hence, they participated in the corrupt activities to suppress the truth about the fabricated and forged Kliemann's 2012 PTR. Thus, they reached a unity of purpose with Defendants I. Kliemann and Maddux fabricated the false 2009 PTR (¶54). Kliemann also fabricated the false annual evaluations for 2008-2012 (¶56) and the false students' surveys (¶57). App. A ¶¶21-25 show that Luecke and Peters, in concert with Associate Provost Carlson, LAS Dean Whiteford, and the University lawyer Overberg, fabricated the false evidence documented there. Peters also fabricated the false annual evaluations for 2004-2007 and a second false 2006 post tenure review (¶¶34, 40-41, 44, 50, 53, 62, 87, 96). Peters' other fabricated false evidence included that in ¶¶28-29, 34, 40-41, 44, 50, 53. Levine's fabrication of false evidence is documented in App. A ¶¶12, 14, 18, 27, 28, 29, 33, 42, 47-50. Sacks's fabrication of false evidence is documented in App. A ¶¶14 and 42. Johnston's fabrication of false evidence is documented in App. A ¶¶34 and 102. Davidson's fabrication of false evidence is documented in App. A ¶¶55, 97, and 102. Hoffman's fabrication of false evidence is documented in App. A ¶¶47-50. Bergman's fabrication of false evidence is documented in App. A ¶¶97, 102. Deisinger's fabrication of false evidence is documented in App. A ¶¶28, 29. VanderZanden's fabrication of false evidence is documented in App. A ¶64. A non exhaustive list of Defs.' other wrongful conduct is given in App. A, B, C, and D. The defendants: Maddux, Luecke, Peters, Carlson, Whiteford, Levine, Sacks, Johnston, Davidson, Bergman, Hoffman, Deisinger, and VanderZanden ("Defendants III"), fabricated false evidence and committed other wrongful conduct, with the objective to remove Pl. from the faculty and terminate his tenured professorship. Thus, Defendants III reached a unity of purpose, a common design and understanding, and meeting of minds with Defendants I. Ranscht and Deist participated in the corrupt activities to suppress the truth about the fabricated false evidence, including without limitation, Kliemann's 2012 PTR (¶¶89-91). Thus, these defendants and Defendants I-III, reached a unity of purpose, a common design and understanding, and meeting of minds to suppress the truth about the fabricated false evidence.

**XV. The testimonies of witnesses with first-hand knowledge of Pl.'s performance showed that, without the University's use of fabricated false evidence, the Pl. would have prevailed in the May 2014 Trial.**

**63.** Defs. prepared and presented the following false evidence to induce and procure the decision in the May 2014 State Court trial: (1) The fabricated and forged Kliemann's 2012 PTR; (2) The fabricated and forged Kliemann and Maddux's 2009 PTR; (3) The fabricated and forged Peters second 2006 PTR; (4) The fabricated Peters' annual evaluations for 2004-2007; (5) The fabricated Kliemann's annual evaluations for 2008-2012; (6) The fabricated Kliemann's students teaching surveys; (7) The concealing by Luecke and Peters of at least three external expert review letters; (8) The fabricated Luecke and Peters second teaching report related to the promotion; (9) The fabricated Luecke and Peters three different versions of the summary of comments related to the promotion; (10) The fabricated Peters chair recommendation letter related to the promotion; and (11) The fabricated Luecke and Peters three different promotion files related to the promotion. During the May 2014 trial, the fabricated and forged Kliemann's 2012 PTR was used in a fundamental way to discredit Pl. in all aspects of his professional responsibilities and defeat Pl.'s lawsuit.

The testimonies of Professors Gunzburger, (Timo) Seppallainen, Hou, and Carlen, as well as Pl., showed that Pl. performance in all aspects of his employment, from the beginning of his employment, was exceptional. (¶¶36-46 and App. B ¶¶19-24). Pl. proved in his testimony that the Defs. retaliated against him for his protected activities: in salary raises by assigning 0% salary raises from 2006 to 2014, by increased teaching loads, by replacing his computer every eight years and only after it crashed while replacing every other tenured faculty every four years, by denying professional travel and conferences financial support while they are allowing financial support to other tenured faculty, by terminating Pl.'s federal awards, by defaming Pl. in the national and international mathematical community.

The only University witnesses with first-hand knowledge of Pl.'s performance that testified in the May 2014 trial, were Kliemann, Luecke, and Peters. Luecke and Peters' testimonies were related to Pl.'s promotion case from tenured associate professor to tenured full professor. Their testimonies were based on the fabricated false evidence listed above. Kliemann's testimony was based on his fabricated

and forged Kliemann's 2012 PTR. LAS Dean Schmittmann and VanderZanden' testimonies were also based on the fabricated and forged Kliemann's 2012 PTR. The damning conclusions in the fabricated and forged Kliemann's 2012 PTR, finding that Pl.'s performance was below expectations in research respectively, teaching, and service with a vote of 6 to 0 respectively, 6 to 0, and 6 to 0, made it impossible for Pl. to prevail in the May 2014 trial.

**XVI. Without the University and the Board of Regents' use of the fabricated and forged Kliemann's 2012 PTR, Plaintiff would have prevailed in his 2013 judicial review on his appeals on the fraudulent content of Kliemann's 2012 PTR.**

**64.** At the time Pl. did not know that Kliemann's 2012 PTR was completely fabricated and forged. The University and the Regents falsely claimed that the six members of the 2012 Dept Tenured Faculty Review Committee conducted, prepared, wrote, and signed the Kliemann's 2012 PTR. This, defeated Pl.'s judicial review about his claim that the content of Kliemann's 2012 PTR was fraudulent. Therefore, without the University and the Regents' preparation, presentation, and use of the fabricated and forged Kliemann's 2012 PTR, the Pl. would have prevailed.

**XVII. Defendants' wrongful conduct committed after the state court May 2014 trial and August 2014 administrative hearing.**

**65.** Removal of Pl.'s classified intellectual properties from Pl.'s office by IT personnel in concert with the University and the University Lawyers.

See App. A.

**XVII.1 New evidence discovered after the August 2014 administrative hearing showed that Kliemann's 2012 post-tenure review report prepared at the direction of Carroll, Esbrook, and Overberg, was completely fabricated and forged.**

**66.** After the August 2014 administrative hearing, Pl. spoke to other members of the 2012 Dept Tenured Faculty Review Committee about whether they were ever involved in Kliemann's 2012 post-tenure review report. Every one of them denied emphatically that they have ever participated in any way in Kliemann's 2012 post-tenure review. They have never conducted, voted on, or signed anything related to any review of Pl. neither in 2012 nor the year before or after.

**XVII.2 The Defs., including Carroll, Esbrook, and Overberg, used fabricated false evidence to induce and procure the proposed decision in the August 2014 administrative hearing.**

67. The Defs., including Carroll, Esbrook, and Overberg, used fabricated false evidence to induce and procure the proposed decision. This included, but not limited to, (1) The fabricated and forged Kliemann's 2012 PTR; (2) The fabricated and forged Kliemann's 2009 PTR; (3) The fabricated and forged Peters second 2006 PTR; (4) The fabricated Peters' annual evaluations for 2004-2007; (5) the fabricated Kliemann's annual evaluations for 2008-2012; And (6) the fabricated students' teaching surveys. During the hearing, Kliemann's 2012 fabricated and forged PTR was used in a fundamental way to discredit Pl. in all aspects of his professional responsibilities. The Defs. deprived Pl. of his constitutional right to a fair and impartial hearing in August 2014.

**XVII.3 After the 2014 August hearing, the University, the University lawyers, and Dept Chair Bergman formed a new tenured review committee to conduct a new post-tenure review of Pl..**

68. See App. A.

**XVII.4 The Defs.' published defamatory material online and in local and national media and newspapers against the Pl. based on fabricated, falsified, and forged documents.**

69. See App. A.

**XVII.5 Pl.'s November 17, 2014 requests for leave to present fundamental new evidence and to present oral argument to ISU President Leath.**

70. See App. A.

**71. Pl.'s January 5, 2015 appeal with ISU president Leath.** On January 5, 2015, Pl. filed his timely brief in support of his appeal.

**72. ISU President Leath's February 23, 2015 response.** In complete disregard and deliberate indifference to Pl.'s fundamental constitutional and civil rights and to the laws of Iowa and the United States, Leath completely ignored and disregarded Pl.'s appeal. He also refused to address the fact that the 2012 post-tenure review report relied upon completely by Kliemann, Dean Schmittmann, Provost Wickert, ALJ Greta, and himself, was unequivocally proven to be fraudulent by the unrebutted testimony of Professor Irv Hentzel. Thus, Leath effectively adopted and endorsed the wrongful acts or omissions that were reported in this appeal and related hearing and documents.

**73. ISU President Leath's changing reasons for his recommendation proved his participation in the fraudulent scheme regarding the fabricated and forged Kliemann's 2012 PTR.**

Professor Hentzel's testimony during the 2014 August administrative hearing showed that Kliemann's 2012 post-tenure review report was fabricated and forged. To circumvent this, the University and the University Lawyers first attempted to have Pl. agree to a new post-tenure review conducted by a tenured review committee whose members were defendants in Pl.'s previous complaints and the Court lawsuit. When this strategy did not work, ISU President Leath tried to change the reasons for his recommendation by claiming it was because Pl. did not cooperate with the reviews.

**XVII.6 Pl.'s March 5, 2015 requests for leave to present fundamental new evidence and to present oral argument to the Regents were denied.**

**74.** See App. A.

**75. The Regents' decision.** In complete disregard and deliberate indifference to Pl.'s fundamental constitutional and civil rights and to the laws of Iowa and the United States, the Regents completely ignored and disregarded Pl.'s appeal. They also refused to address the fact that the 2012 post-tenure review report relied upon completely by Kliemann, LAS Dean Schmittmann, Provost Wickert, ALJ Greta, and ISU President Leath, was unequivocally proven to be fraudulent by the unrebutted testimony of Professor Irv Hentzel. Thus, the Regents effectively adopted and endorsed the wrongful acts or omissions that were reported in this appeal and related hearing and documents.

**XVII.7 The Defs. used fabricated false evidence to induce and procure the Regents' final decision in June 2015.**

**76.** The Defs., including Carroll, DeArmond, Esbrook, and Overberg used fabricated false evidence to induce and procure the Regents' final decision. This included, but not limited to, (1) The fabricated and forged Kliemann's 2012 PTR; (2) The fabricated and forged Kliemann's 2009 PTR; (3) The fabricated and forged Peters second 2006 PTR; (4) The fabricated Peters' annual evaluations for 2004-2007; (5) The fabricated Kliemann's annual evaluations for 2008-2012; And (6) the fabricated students' teaching surveys. The fabricated and forged Kliemann's 2012 PTR was used in a fundamental way to discredit Pl. in all aspects of his professional responsibilities. The Defs. deprived Pl. of his constitutional right

to a fair and impartial hearing in June 2015. The Defs. deprived Pl. of his constitutional right to his tenured professorship and to a continued public employment.

### XVII.8 Based on false annual evaluations for 2013-2014, Dept Chair Bergman, LAS Dean Schmittmann, Provost Wickert, and ISU President Leath gave Pl. 0% salary raises for 2014-2015.

77. After Pl. filed with the FSCA, EEOC and ICRC, and the state court, Bergman and Davidson retaliated against Pl. by fabricating false evidence on his performance as a faculty and defaming him. This included, but was not limited to, preparing false annual evaluations, failing to give Pl. appropriate raises based on the facts and circumstances, and other acts and omissions designed to adversely affect his working environment and to deprive him from his tenured professorship. These wrongful acts were repeated each year from 2013 to 2014. Based on false annual evaluations for 2013-2014, Bergman, Schmittmann, Wickert, and Leath gave Pl. 0% salary raises for the years 2014 and 2015.

78. **Retaliation regarding computer equipment and its consequences.** From 2004 to 2015, Peters and Kliemann retaliated against Pl. concerning the replacement of Pl.'s computer. The Dept replaced every other regular faculty's computer every four years, while it replaced Pl.'s computer every 8 years and only after it crashed each time (App. A).

79. Each year from 2006 to 2015 Peters, Johnston, Kliemann, and Sacks, in retaliatory discrimination interfered with Pl.'s graduate courses assignments (App. A).

80. Each year from 2006 to 2015, successive chairs and associate chairs Peters, Johnston, Kliemann, Davidson, and Bergman, in retaliatory discrimination, interfered with Pl.'s advanced undergraduate courses assignments (App. A).

81. Each year from 2006 to 2015, the Defs. retaliated against the Pl. by assigning to him a teaching load of an average of 14 credit courses per academic year, while they assigned to similarly situated regular tenured faculty an average teaching load of 8 credit courses per academic year from 2006 to 2015. This wrongful conduct was repeated each year from approximately 2006 to 2015 (App. A).

82. After Pl. filed his first complaints, Peters, Kliemann, and Bergman disregarded Pl.'s requests to use faculty travel and expenditures Dept funds for his professional travel and other professional expenses.

Other regular tenured faculty were regularly allowed to use faculty travel and expenditures Dept funds for their travels and other expenses. This wrongful conduct was repeated each year from approximately 2006 to 2015.

**83.** The University refused to compensate Pl. for professional travel expenses, computer equipment, and other professional expenses through his own incentive account. This account is made of a percentage of money from his previous federal awards and grants that go directly to this account. It does not belong to the University. This wrongful conduct occurred in Fall 2014.

**XVII.9 On March 28, 2016, Pl. filed a complaint with the EEOC and the ICRC on the wrongful termination and related issues.**

**84.** On March 28, 2016, Pl. filed a complaint with the EEOC and the ICRC based on retaliation for his protected activities and retaliatory hostile work environment that culminated in the termination of his tenured professorship in summer 2015. Pl. also reported that after filing internal complaints with Dept Chair, the LAS Dean, the FSCA, and the Regents in 2005, 2006, and 2007, and complaints of retaliatory discrimination with the ICRC and EEOC in 2008, and the Court in 2011, the Pl. became the victim of continuously escalating retaliatory conduct.

**XVII.10 The Defs. used fabricated false evidence to induce and procure favourable decisions in the EEOC and ICRC investigations in April and June 2017.**

**85.** Defs. obstructed and impeded the EEOC investigation and inflicted further damage on Pl. in April 2017 and on June 23, 2017, since the EEOC did not take the case on behalf of Pl. Moreover, Pl. learnt in April 2017 through communication with the federal investigator, that was overseeing the EEOC investigation, that the Defs. used documents that Pl. knew were falsified documents and other documents that misrepresented Iowa law and prevented the EEOC investigation from going further and taking the case on behalf of Pl. Instead, the EEOC just issued a right-to-sue letter.

**86.** The EEOC administratively closed the Pl.'s complaint on June 12, 2017. The ICRC administratively closed Pl.'s complaint on June 23, 2017, and ultimately issued right-to-sue letters. The ICRC issued a right-to-sue letter on July 10, 2019.

**XVII.11 The remarkable four years delay to act by Judge Ruigh enabled the Defs. to**

inflict multiple injuries on Pl.

87. The remarkable four years delay to act by Judge Ruigh enabled the Defs. to inflict multiple injuries on Pl. in a continuing manner and led to the wrongful termination. This delay injured Pl. in many ways, including: (1) It deprived Pl. of his constitutional right to due process of law; (2) It deprived him of his right to a new trial; (3) It deprived him access to the appeal at a time when he was still employed and the appeal could have prevented the wrongful termination, thus, it obstructed justice; And (4) by March 2018, any potential success of the appeal was heavily undermined by the wrongful termination and Defs.' defamation. Pl. was harmed as a consequence.

**XVII.12 The Defs. prepared and presented fabricated false evidence to induce and procure the jury verdict in the state court May 2014 trial and Judge Ruigh's decision on March 9, 2018 depriving Pl. of new trial.**

88. On March 9, 2018, Judge Ruigh ruled on Pl.'s June 2014 post-trial motions about a remarkable four years after the trial. Defs. used fabricated false evidence to induce and procure the jury verdict in the state court May 2014 trial and the decision on Pl.'s June 2014 post-trial motions on March 9, 2018. Defs. deprived Pl. of his constitutional right to a fair trial in the May 2014 trial. Defs. deprived Pl. of his constitutional right to a new trial on March 9, 2018.

**XVII.13 Defs.'s corrupt activities to suppress the truth about their use of fabricated false evidence to induce and procure the federal court decisions to dismiss Pl.'s lawsuits 4:20-cv-85 and 4:19-cv-321 in September 2020 and the decision on his appeals with the 8th circuit in September 22, 2021.**

89. In February 2017, Pl. filed a lawsuit based on §§1983, 1985 with the Federal Court. He later voluntarily dismissed it without prejudice against himself because: (1) the law firm that was interested to take the case contingent fee decided not to due to Defs.' published defamation; and (2) at that time the EEOC and ICRC were still investigating Pl.'s complaints. On October 7, 2019, Pl. filed a lawsuit with the Federal Court based on the right-to-sue letter issued to him by the ICRC on July 10, 2019, and contract violations under §1981 (Pl. is Caucasian of Mediterranean descent) within 90 days from the letter issue date: Case 4:19-cv-321. He later amended his complaint to include §§1983,1985 claims. On March 9, 2020, he filed a second suit to include seven additional defendants: Case 4:20-cv-85. ALJ

Greta and Judge Ruigh were sued for prospective declaratory relief. The other defendants were sued in their official and individual capacities and for wrongful conduct that was beyond the scope of their employment and for their own benefit and personal reasons.

90. Defs., including Carroll, Esbrook, Ranscht, and Deist, prepared and presented the following fabricated false evidence: (1) The fabricated and forged Kliemann's 2012 PTR; (2) The fabricated and forged Kliemann's 2009 PTR; (3) The fabricated and forged Peters second 2006 PTR; (4) The fabricated Peters' annual evaluations for 2004-2007; (5) The fabricated Kliemann's annual evaluations for 2008-2012; (6) The fabricated students' teaching surveys; (7) The concealing by Luecke and Peters of at least three external expert review letters; (8) The fabricated Luecke and Peters second teaching report related to the promotion; (9) The fabricated Luecke and Peters three different versions of the summary of comments related to the promotion; (10) The fabricated Peters chair recommendation letter related to the promotion; And (11) the fabricated Luecke and Peters three different promotion files related to the promotion. In their motion to dismiss and subsequent filings, Defs., including Carroll, Esbrook, Ranscht, and Deist, showed a reckless and egregious disregard of the truth and a deliberate indifference to Pl.'s constitutional rights in order to suppress the truth about their use of the fabricated false evidence above. Defs. used the fabricated false evidence above and the corrupt activities to suppress the truth in order to induce and procure the federal court's decision to dismiss Pl.'s cases (App. C, D). Pl. then filed timely appeals with the 8th Circuit Court of Appeals, which affirmed the decision on September 22, 2021 based on Defs.' fabricated false evidence and corrupt activities to suppress the truth (App. C, D). Pl. later filed with the Supreme Court of the United States. The Supreme Court did not select his case for review.

**XVII.14 Defendants deprived Pl. of his constitutional right to access to the court and his constitutional right to sue and maintain his lawsuit.**

91. Defs.' use of the fabricated false evidence and the corrupt activities to suppress the truth in order to induce and procure the federal court's decision to dismiss Pl.'s cases and the 8th circuit's decision, deprived Pl. of his constitutional right to access to the court and his constitutional right to sue and

maintain his lawsuit (App. C, D).

**XVII.15. Without Defendants' use of fabricated false evidence, the Pl. would have pre-vailed in his federal cases claims including, in his Whistleblower retaliation and ICRA claims.**

**92.** Defs.' wrongful acts, which included, Defs.' misconduct that occurred after the May 2014 trial and and after the August 2014, administrative hearing, and the testimonies of witnesses with first-hand knowledge of Pl.'s performance in the May 2014 trial and the August 2014 administrative hearing, show that, without Defs.' use of fabricated false evidence, Pl. would have prevailed in his federal cases claims including, in his Whistleblower retaliation and ICRA claims.

**XVII.16 April 2023 decision on Plaintiff's tort claims filed with the state of Iowa.**

**93.** In May 2017, Pl. filed his timely tort claims with the Dept of Management. On April 3, 2023, the Iowa Attorney General denied Pl.'s tort claims based on the September 22, 2023, 8th circuit decision.

**XVIII. Legal counts.**

**94.** Defs. acted beyond the scope of their authority. They acted outside the scope of their employment, for their own benefit, and for personal reasons.

**95.** At all relevant times and in all counts herein, Defs. acted under the color of state law and are sued in their official capacity and in their individual and personal capacity.

**96.** Pl. has been damaged and will continue to be damaged as a result of past and ongoing wrongful conduct, including violations of federal laws.

**97.** Pl. is entitled to a monetary judgment in an amount exceeding this court's jurisdictional minimum, attorney's fees and costs.

**98.** Pl. is entitled to injunctive, declaratory, prospective, and other equitable relief from the court and seeks a court order preventing further wrongful conduct, reprisals and retaliatory actions against him and affirmative relief to rectify the retaliatory actions taken against him and any other equitable relief the court deems appropriate.

**99.** Pl. is entitled to equitable relief and legal relief from the court.

**100.** The conduct of Defs. was and continues to be willful and wanton and in malicious and reckless disregard of Pl.'s rights, and in deliberate indifference to Pl.'s constitutional and civil rights, and in deliberate indifference to the faculty handbook and the laws of the United States and Iowa.

**101.** All of Pl.'s claims herein are timely, either because the actionable conduct occurred within the applicable limitations period, or because Pl. discovered the basis for his claim within the applicable limitations period, or because of the continuing torts, or because the wrongful conduct has been continuous and ongoing, or because of equitable estoppel, or because of equitable tolling.

**COUNT 1. Violation of Federal Civil Rights Statute 42 U.S.C. Section 1983: Defendants, including, the University and the Regents, deliberately fabricated Kliemann's 2012 PTR and claimed that the 2012 Dept Tenured Faculty Review Committee conducted, prepared, wrote, and signed Kliemann's 2012 PTR. Thereby, Defendants deprived Plaintiff of his constitutional right to a fair judicial review on his appeal with the FSCA, the University, and the Regents, regarding the fraudulent content of Kliemann's 2012 PTR in 2013 without due process of law.**

**102.** Pl. restates and incorporates herein by reference ¶¶1-142.

**103.** Defs., including, the University and the Regents, deliberately fabricated Kliemann's 2012 PTR.

**104.** Defs. claimed that the 2012 Dept Tenured Faculty Review Committee conducted, prepared, wrote, and signed Kliemann's 2012 PTR.

**105.** Defs. deprived Pl.'s of his constitutional right to a fair judicial review on his appeal.

**106.** Defs.' wrongful acts deprived Pl. of his constitutional right to procedural due process pursuant to the Fourteenth Amendment.

**107.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s constitutional right to procedural due process and the laws of the United States and Iowa.

**108.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**109.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his continued public employment.

**110.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment and professional

and personal life.

111. Defs.' wrongful conduct was directed at the Pl. in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

112. Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

113. WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.


**COUNT 2. Violation of Federal Civil Rights Statute 42 U.S.C. Section 1983: Defendants deliberately fabricated false evidence and used it to deprive Plaintiff of his constitutional right to a fair trial in the May 2014 state court trial without due process of law.**

114. Pl. restates and incorporates herein by reference ¶¶1-113.

115. Defs. deliberately fabricated the false evidence: (1) The fabricated and forged Kliemann's 2012 PTR; (2) The fabricated and forged Kliemann's 2009 PTR; (3) The fabricated and forged Peters second 2006 PTR; (4) The fabricated Peters' annual evaluations for 2004-2007; (5) The fabricated Kliemann's annual evaluations for 2008-2012; (6) The fabricated Kliemann's students' teaching surveys; (7) The concealing by Luecke and Peters of at least three external expert review letters; (8) The fabricated Luecke and Peters second teaching report related to the promotion; (9) The fabricated Luecke and Peters three different versions of the summary of comments related to the promotion; (10) The fabricated Peters chair recommendation letter related to the promotion; And (11) the fabricated Luecke and Peters three different promotion files.

116. Defs. used this fabricated evidence to induce and procure the jury verdict in the May 2014 trial.

**117.** Defs.' wrongful conduct deprived Pl. of his constitutional right to a fair trial in the 2014 state court case.

**118.** Defs.' wrongful acts deprived Pl. of his constitutional right to procedural due process pursuant to the Fourteenth Amendment.

**119.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s constitutional right to procedural due process and the laws of the United States and Iowa.

**120.** Defs.' retaliatory wrongful conduct violates Pl.'s rights under the Iowa Civil Rights Act and the Iowa Whistleblower Retaliation Act.

**121.** Defs.' wrongful conduct adversely affected all aspects of Pl.'s employment and his professional and personal life.

**122.** Defs.' wrongful conduct was directed at the Pl. in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**123.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**124.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**125.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

**COUNT 3. Violation of Federal Civil Rights Statute 42 U.S.C. Section 1983: Defendants deliberately fabricated false evidence and used it to deprive Plaintiff of his constitutional right to a fair and impartial tribunal in the August 2014 administrative hearing without**

due process of law.

**126.** Pl. restates and incorporates herein by reference ¶¶1-125.

**127.** Defs. deliberately fabricated the false evidence: (1) The fabricated and forged Kliemann's 2012 PTR; (2) The fabricated and forged Kliemann's 2009 PTR; (3) The fabricated and forged Peters second 2006 PTR; (4) The fabricated Peters' annual evaluations for 2004-2007; (5) The fabricated Kliemann's annual evaluations for 2008-2012; (6) The fabricated Kliemann's students' teaching surveys; And (7) the fabricated Luecke and Peters second teaching report related to the promotion.

**128.** Defs. used this fabricated evidence to induce and procure ALJ Greta's proposed decision in the August 2014 administrative hearing.

**129.** Defs.' wrongful conduct deprived Pl. of his constitutional right to a fair and impartial tribunal in the August 2014 administrative hearing.

**130.** Defs.' wrongful acts deprived Pl. of his constitutional right to procedural due process pursuant to the Fourteenth Amendment.

**131.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s constitutional right to procedural due process and the laws of the United States and Iowa.

**132.** Defs.' wrongful conduct adversely affected all aspects of Pl.'s employment and his professional and personal life.

**133.** Defs.' wrongful conduct was directed at the Pl., in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**134.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and continued public employment.

**135.** Defs.' wrongful acts damaged the Pl.'s reputation so severely that his associational and em-

ployment opportunities and prospective business and contract opportunities were and continue to be impaired, thus depriving him of his liberty rights.

**136.** Defs. failed to act in accordance with the applicable mandatory governance documents, policies, and/or provisions of the faculty handbook, and the laws of the United States and Iowa.

**137.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**138.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

**COUNT 4. Violation of Federal Civil Rights Statute 42 U.S.C. Section 1983: Defendants deliberately fabricated false evidence and used it to deprive Plaintiff of his constitutional right to access to the court, his constitutional right to sue and maintain his lawsuits, and his constitutional right to a fair trial in his 2019 and 2020 federal court cases without due process of law.**

**139.** Pl. restates and incorporates herein by reference ¶¶1-138.

**140.** Defs. deliberately fabricated the false evidence: (1) The fabricated and forged Kliemann's 2012 PTR; (2) The fabricated and forged Kliemann's 2009 PTR; (3) The fabricated and forged Peters second 2006 PTR; (4) The fabricated Peters' annual evaluations for 2004-2007; (5) The fabricated Kliemann's annual evaluations for 2008-2012; (6) The fabricated Kliemann's students' teaching surveys; (7) The concealing by Luecke and Peters of at least three external expert review letters; (8) The fabricated Luecke and Peters second teaching report related to the promotion; (9) The fabricated Luecke and Peters three different versions of the summary of comments related to the promotion; (10) The fabricated Peters chair recommendation letter related to the promotion; And (11) the fabricated Luecke and Peters three different promotion files.

**141.** Defs.' wrongful acts deprived Pl. of his constitutional right to access to the court, his constitutional right to sue and maintain his lawsuits, and his constitutional right to a fair trial in his 2019 and 2020

federal court cases.

142. Defs.' wrongful acts deprived Pl. of his constitutional right to procedural due process pursuant to the Fourteenth Amendment.

143. Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s constitutional right to procedural due process and the laws of the United States and Iowa.

144. Defs.' wrongful conduct was directed at the Pl. in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

145. Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

146. Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his continued public employment.

147. Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment and professional and personal life.

148. Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

149. WHEREFORE, Pl. prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.


**COUNT 5. Violation of Federal Civil Rights Statute 42 U.S.C. Section 1985(2): impeding, hindering, defeating, and obstructing justice in state proceedings.**

150. Pl. restates and incorporates herein by reference ¶¶1-149.

**151.** Defs. deliberately fabricated the false evidence in ¶140 above.

**152.** Initially, the FSCA planned to review Pl.'s appeal regarding the fraudulent content of Kliemann's 2012 PTR. Defs. interfered to obstruct and block the FSCA review.

**153.** Defs. used fabricated false evidence to obstruct and defeat Pl.'s administrative appeals with the FSCA, the University, and the Regents.

**154.** Defs. used fabricated false evidence to obstruct and defeat Pl.'s complaints with the ICRC.

**155.** Defs. interfered with the May 2014 state court trial. Defs. replaced Judge Finn by Judge Ruigh.

**156.** Defs. used fabricated false evidence to obstruct and defeat Pl.'s state court case in May 2014 and his post-trial motions in March 2018.

**157.** Defs. interfered with the August 2014 administrative hearing. Defs. replaced ALJ Lockard by ALJ Greta.

**158.** Defs. used fabricated false evidence to obstruct justice in the August 2014 administrative hearing.

**159.** Defs.' wrongful acts deprived Pl. of his constitutional right to procedural due process pursuant to the Fourteenth Amendment.

**160.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s constitutional right to procedural due process and the laws of the United States and Iowa.

**161.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**162.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his continued public employment.

**163.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment and professional and personal life.

**164.** Defs.' wrongful conduct was directed at the Pl. in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA,

48

the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**165.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**166.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and other appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

### COUNT 6. Conspiracy to violate Federal Civil Rights Statute 42 U.S.C. Section 1985(2): impeding, hindering, defeating, and obstructing justice in federal proceedings

**167.** Pl. restates and incorporates herein by reference ¶¶1-166.

**168.** Defs. deliberately fabricated the false evidence in ¶140 above.

**169.** Defs. used fabricated false evidence to obstruct and defeat Pl.'s complaints with the EEOC.

**170.** Defs. used fabricated false evidence to obstruct and defeat Pl.'s federal court cases 4:19-cv-321 and 4:20-cv-85.

**171.** Defs.' wrongful acts deprived the Pl. of his constitutional right to procedural due process pursuant to the Fourteenth Amendment.

**172.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s constitutional right to procedural due process and the laws of the United States and Iowa.

**173.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**174.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his continued public employment.

**175.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment and professional and personal life.

**176.** Defs.' wrongful conduct was directed at the Pl. in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**177.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**178.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and other appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

**COUNT 7. Violation of Federal Civil Rights Statute 42 U.S.C. Section 1983: Defendants deliberately fabricated false evidence and used it to deprive Plaintiff of his property right to his tenured professorship and continued public employment without due process of law.**

**179.** Pl. restates and incorporates herein by reference ¶¶1-178.

**180.** Defs. deliberately fabricated the false evidence in ¶140.

**181.** Defs. used this fabricated evidence to deprive Pl. of his property right to his tenured professorship and continued public employment.

**182.** Defs.' wrongful acts deprived Pl. of his constitutional right to procedural due process pursuant to the Fourteenth Amendment.

**183.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s constitutional right to procedural due process and the laws of the United States and Iowa.

**184.** Defs.' wrongful conduct adversely affected all aspects of Pl.'s employment and his professional and personal life.

**185.** Defs.' wrongful conduct was directed at the Pl., in substantial part, as a reprisal for his internal

complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**186.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**187.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

### COUNT 8. Violation of Federal Civil Rights Statute 42 U.S.C. Section 1983: Defendants deliberately fabricated false evidence and used it to deprive Plaintiff of his substantive due process right to be free from arbitrary and capricious state actions.

**189.** Pl. restates and incorporates herein by reference ¶¶1-188.

**190.** Defs. deliberately fabricated the false evidence in ¶140.

**191.** Defs. used this fabricated evidence to induce and procure the decision in the 2013 judicial review.

**192.** Defs. deprived Pl.'s of his constitutional right to a fair judicial review on his appeal.

**193.** Defs. used this fabricated evidence to induce and procure the jury verdict in the May 2014 trial.

**194.** Defs.' wrongful conduct deprived Pl. of his constitutional right to a fair trial in the 2014 state court case.

**195.** Defs. used this fabricated evidence to induce and procure ALJ Greta's proposed decision in the August 2014 administrative hearing.

**196.** Defs.' wrongful conduct deprived Pl. of his constitutional right to a fair and impartial tribunal in the August 2014 administrative hearing.

**197.** Defs.' wrongful acts deprived Pl. of his constitutional right to access to the court, his constitutional right to sue and maintain his lawsuits, and his constitutional right to a fair trial in his 2019 and 2020

federal court cases.

**198.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**199.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his continued public employment.

**200.** Defs.' wrongful acts deprived Pl. of his substantive due process right pursuant to the Fourteenth Amendment.

**201.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s substantive due process right to be free from arbitrary and capricious state actions.

**202.** Defs.' wrongful conduct was directed at the Pl. in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**203.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment and professional and personal life.

**204.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**205.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

**COUNT 9. Violation of Federal Civil Rights Statute 42 U.S.C. Section 1983: Defendants deliberately fabricated false evidence and used it to deprive Plaintiff of his constitutional right to be free from retaliatory discrimination without due process of law.**

**206.** Pl. restates and incorporates herein by reference ¶¶1-205.

**207.** Defs. deliberately fabricated the false evidence in ¶140.

**208.** Defs.' wrongful acts deprived Pl. of his constitutional right to be free from retaliatory discrimination.

**209.** Defs.' wrongful acts deprived Pl. of his constitutional right to procedural due process pursuant to the Fourteenth Amendment.

**210.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s constitutional right to procedural due process and the laws of the United States and Iowa.

**211.** The Pl. was treated differently from other faculty based on retaliatory animus based on his exercise of federally and state protected activities.

**212.** Defs.' wrongful conduct was directed at the Pl. in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**213.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**214.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his continued public employment.

**215.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment and professional and personal life.

**216.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**217.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and other appropriate

injunctive and equitable relief and for such other relief as the court may deem appropriate.

**COUNT 10.  Violation of Federal Civil Rights Statute 42 U.S.C. Section 1983: Defendants deliberately fabricated false evidence and used it to deprive Plaintiff of his constitutional right to access to the court, his constitutional right to sue and maintain his lawsuits, and his constitutional right to a fair trial under Iowa Civil Right Act without due process of law.**

**218.** Pl. restates and incorporates herein by reference ¶¶1-217.

**219.** Defs. deliberately fabricated the false evidence in ¶140.

**220.** Defs.' wrongful acts deprived Pl. of his constitutional right to access to the court, his constitutional right to sue and maintain his lawsuits, and his constitutional right to a fair trial under Iowa Civil Right Act.

**221.** Defs.' wrongful acts deprived Pl. of his constitutional right to procedural due process pursuant to the Fourteenth Amendment.

**222.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s constitutional right to procedural due process and the laws of the United States and Iowa.

**223.** Pl. is protected by the Iowa Civil Rights Act because he made both internal complaints of retaliation, harassment and a hostile work environment and reported illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, and the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216.

**224.** The Pl. was treated differently from other faculty based on retaliatory animus based on his exercise of federally and state protected activities.

**225.** Defs.' wrongful conduct was directed at the Pl.  in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216.

**226.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**227.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his continued public employment.

**228.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment and professional and personal life.

**229.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**230.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, for allowing Plaintiff to proceed with his Iowa Civil Right Act claims against the Defendants, including the University and the Board of Regents as a separate state claims as described in Counts 15 and 16 below, and other appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

### COUNT 11. Violation of Federal Civil Rights Statute 42 U.S.C. Section 1983: Defendants deliberately fabricated false evidence and used it to deprive Plaintiff of his constitutional right to access to the court, his constitutional right to sue and maintain his lawsuits, and his constitutional right to a fair trial under Iowa Whistleblower Retaliation Act without due process of law.

**231.** Pl. restates and incorporates herein by reference ¶¶1-230.

**232.** Defs. deliberately fabricated the false evidence in ¶140.

**233.** Defs.' wrongful acts deprived Pl. of his constitutional right to access to the court, his constitutional right to sue and maintain his lawsuits, and his constitutional right to a fair trial under Iowa Whistleblower Retaliation Act.

**234.** Defs.' wrongful acts deprived Pl. of his constitutional right to procedural due process pursuant to the Fourteenth Amendment.

**235.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s constitutional right

to procedural due process and the laws of the United States and Iowa.

**236.** Pl. is protected by the Iowa Whistleblower Retaliation Act because he made both internal complaints of retaliation, harassment and a hostile work environment and reported illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, and the Board of Regents, the EEOC, the ICRC, and the state court.  These are protected activities under Iowa Whistleblower Retaliation Act.

**237.** The Pl. was treated differently from other faculty based on retaliatory animus based on his exercise of federally and state protected activities.

**238.** Defs.' wrongful conduct was directed at the Pl.  in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court.  These are protected activities under Iowa Code Chapter 216.

**239.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**240.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his continued public employment.

**241.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment and professional and personal life.

**242.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**243.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, for allowing Plaintiff to proceed with his Iowa Whistleblower Retaliation claims against the Defendants, including

the University and the Board of Regents as a separate state claims as described in Count 17 below, and other appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

### COUNT 12. Violation of Federal Civil Rights Statute 42 U.S.C. Section 1983: The Defendants deliberately fabricated false evidence and used it to deprive Plaintiff of his constitutional right to his contract with the University without due process of law.

**244.** Pl. restates and incorporates herein by reference ¶¶1-243.

**245.** Defs. deliberately fabricated the false evidence in ¶140.

**246.** Defs.' failed to act in accordance with the applicable mandatory governance documents, policies, and/or provisions of the faculty handbook, and the laws of the United States and Iowa.

**247.** Defs.' wrongful acts damaged Pl.'s reputation so severely that his associational and employment opportunities and prospective business and contract opportunities were and continue to be impaired thus depriving him of his liberty rights.

**248.** Defs.' wrongful acts deprived Pl. of his constitutional right to procedural due process pursuant to the Fourteenth Amendment.

**249.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s constitutional right to procedural due process and the laws of the United States and Iowa.

**250.** Defs.' wrongful conduct was directed at the Pl. in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**251.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**252.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his continued public employment.

**253.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment and professional and personal life.

**254.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**255.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, for allowing Plaintiff to proceed with his Breach of Contract claims against Defendants, including the University and the Board of Regents, as a separate state claims as described in Count 18 below, and other appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

### COUNT 13. Violation of Federal Civil Rights Statute 42 U.S.C. Section 1983: Defendants deliberately fabricated false evidence and used it to deprive Plaintiff of his constitutional right to contract opportunities and prospective business without due process of law.

**256.** Pl. restates and incorporates herein by reference ¶¶1-255.

**257.** Defs. deliberately fabricated the false evidence in ¶140.

**258.** Defs.' wrongful acts damaged the Pl.'s reputation so severely that his associational and employment opportunities and prospective business and contract opportunities were and continue to be impaired thus depriving him of his liberty rights.

**259.** Defs.' wrongful acts deprived Pl. of his constitutional right to procedural due process pursuant to the Fourteenth Amendment.

**260.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s constitutional right to procedural due process and the laws of the United States and Iowa.

**261.** Defs.' failed to act in accordance with the applicable mandatory governance documents, policies, and/or provisions of the faculty handbook, and the laws of the United States and Iowa.

**262.** Defs.' wrongful conduct was directed at the Pl. in substantial part, as a reprisal for his internal

complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**263.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**264.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his continued public employment.

**265.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment and professional and personal life.

**266.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**267.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, for allowing Plaintiff to proceed with his interference with contract opportunities and prospective business claims against Defendants, including the University and the Board of Regents, as a separate state claims as described in Count 19 below, and other appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

### COUNT 14. Violation of Federal Civil Rights Statute 42 U.S.C. Section 1983: Defendants deliberately fabricated false evidence and used it to deprive Plaintiff of his constitutional right to be free from "Stigma" and harm to his reputation without due process of law.

**268.** Pl. restates and incorporates herein by reference ¶¶1-267.

**269.** Defs. deliberately fabricated the false evidence listed in ¶130 above.

**270.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his

continued public employment.

**271.** Defs.' published in connection with the wrongful termination, defamatory material online and in local and national media and newspapers against the Pl. based on this fabricated false evidence.

**272.** Defs.' wrongful acts damaged the Pl.'s reputation so severely that his associational and employment opportunities and prospective business and contract opportunities were and continue to be impaired thus depriving him of his liberty rights.

**273.** Defs.' fabricated false evidence deprived Pl. of his constitutional right to be free from "Stigma" and harm to his reputation.

**274.** Defs.' wrongful acts deprived Pl. of his constitutional right to procedural due process pursuant to the Fourteenth Amendment.

**275.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s constitutional right to procedural due process and the laws of the United States and Iowa.

**276.** Defs.' wrongful conduct was directed at the Pl. in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**277.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment and professional and personal life.

**278.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**279.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and other appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

COUNT 15. Violation of the Iowa Civil Rights Act (Iowa Code Ch. 216): Retaliation.

**280.** Pl. restates and incorporates herein by reference ¶¶1-279.

**281.** Pl. is protected by the Iowa Whistleblower Retaliation Act and the Iowa Civil Rights Act because he made both internal complaints of retaliation, harassment and a hostile work environment and reported illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, and the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**282.** The Pl. was treated differently from other faculty based on retaliatory animus based on his exercise of federally and state protected activities including filing complaints against Defs. with the Regents, the ICRC, the EEOC, and the court.

**283.** Defs.' wrongful conduct was directed at the Pl. in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**284.** Defs.' retaliatory wrongful conduct violates the Pl.'s rights under the above Iowa Civil Rights Act.

**285.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s civil rights.

**286.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**287.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his continued public employment.

**288.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment professional and personal life.

**289.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**290.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

### COUNT 16. Violation of the Iowa Civil Rights Act (Iowa Code Ch. 216): retaliation-harassment-hostile work environment.

**291.** Pl. restates and incorporates herein by reference ¶¶1-290.

**292.** Pl. is protected by the Iowa Whistleblower Retaliation Act and the Iowa Civil Rights Act because he made both internal complaints of retaliation, harassment and a hostile work environment and reported illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, and the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**293.** The Pl. was treated differently from other faculty based on retaliatory animus based on his exercise of federally and state protected activities including filing complaints against Defs. with the Regents, the ICRC, the EEOC, and the court.

**294.** Defs.' wrongful conduct was directed at Pl. in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**295.** Defs.' retaliatory wrongful conduct violates the Pl.'s rights under the Iowa Civil Rights Act.

**296.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s civil rights.

62

**297.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**298.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his continued public employment.

**299.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment professional and personal life.

**300.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**301.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

## COUNT 17: Iowa Whistleblower Retaliation Act.

**302.** Pl. restates and incorporates herein by reference ¶¶1-301.

**303.** Defs. deliberately fabricated the false evidence in ¶140.

**304.** Pl. is protected by the Iowa Whistleblower Retaliation Act and the Iowa Civil Rights Act because he made both internal complaints of retaliation, harassment and a hostile work environment and reported illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, and the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**305.** The Pl. was treated differently from other faculty based on retaliatory animus based on his exercise of federally and state protected activities including filing complaints against the defendants with the Regents, the ICRC, the EEOC, and the court.

**306.** Defs.' wrongful conduct was directed at the Pl. in substantial part, as a reprisal for his internal

complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Retaliation Act.

**307.** Defs.' retaliatory wrongful conduct violates Pl.'s rights under the Iowa Whistleblower Retaliation Act.

**308.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s civil rights.

**309.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**310.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his continued public employment.

**311.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment and professional and personal life.

**312.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**313.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

## COUNT 18: Breach of Contract.

**314.** Pl. restates and incorporates herein by reference ¶¶1-313.

**315.** Defs. deliberately fabricated the false evidence listed in ¶130 above.

**316.** Defs.' failed to act in accordance with the applicable mandatory governance documents, policies, and/or provisions of the faculty handbook, and the laws of the United States and Iowa.

**317.** Defs. acted with malice, reckless disregard, and deliberate indifference to the governance documents.

**318.** Defs.' wrongful conduct was directed at the Pl. in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**319.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**320.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his continued public employment.

**321.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment and professional and personal life.

**322.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**323.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and other appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

### COUNT 19: Interference with contract opportunities and prospective business.

**324.** Pl. restates and incorporates herein by reference ¶¶1-323.

**325.** Defs. deliberately fabricated the false evidence listed in ¶130 above.

**326.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**327.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his

continued public employment.

**328.** Defs.' wrongful acts damaged Pl.'s reputation so severely that his associational and employment opportunities and prospective business and contract opportunities were and continue to be impaired, thus depriving him of his liberty rights.

**329.** Defs.' failed to act in accordance with the applicable mandatory governance documents, policies, and/or provisions of the faculty handbook, and the laws of the United States and Iowa.

**330.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s rights under Iowa laws.

**331.** Defs.' wrongful conduct was directed at the Pl. in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**332.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment and professional and personal life.

**333.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**334.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and other appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

## COUNT 20: Malicious prosecution.

**335.** Pl. restates and incorporates herein by reference ¶¶1-334.

**336.** Defs. deliberately fabricated the false evidence listed in ¶130 above.

**337.** The University's complaint was initiated by Kliemann, who had no official responsibilities to

authorize him to initiate the complaint.

**338.** Kliemann's complaint was based on his fabricated and forged Kliemann's 2012 PTR.

**339.** The College and the University did not conduct any independent investigation into Kliemann's assertions.

**340.** Defs. acted with malice, reckless disregard, and deliberate indifference to Pl.'s rights under Iowa laws.

**341.** Without the use of the fabricated false evidence in ¶140, the University would not have prevailed in the August 2014 administrative hearing.

**342.** Defs. failed to act in accordance with the applicable mandatory governance documents, policies, and/or provisions of the faculty handbook, and the laws of the United States and Iowa.

**343.** Defs.' wrongful conduct was directed at the Pl. in substantial part, as a reprisal for his internal complaints of harassment and a hostile work environment, and for reporting of illegal activities by the Dept, College, and the University, including, illegal hiring that violated federal laws, with the FSCA, the University, the Board of Regents, the EEOC, the ICRC, and the state court. These are protected activities under Iowa Code Chapter 216 and the Iowa Whistleblower Act.

**344.** Defs.' wrongful conduct deprived Pl. of his promotion from tenured associate professor to tenured full professor.

**345.** Defs.' wrongful conduct deprived Pl. of his property right to his tenured professorship and his continued public employment.

**346.** Defs.' wrongful conduct adversely affected all aspects of the Pl.'s employment and professional and personal life.

**347.** Pl. is entitled to compensatory damages, back pay, front pay, attorney's fees and costs, punitive damages, and appropriate injunctive and equitable relief.

**348.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay,

and front pay, for attorney fees and costs of this action, and for punitive damages, and other appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

## COUNT 21: Emotional distress.

**349.** Pl. restates and incorporates herein by reference ¶¶1-348.

**350.** The conduct of Defs. is, was, and has been outrageous.

**351.** Defs. intentionally caused emotional distress and/or acted with reckless disregard of the probability of causing emotional distress on the part of Pl.

**352.** Pl. has suffered severe emotional distress as a proximate result of Defs. outrageous conduct.

**353.** Pl. is entitled to damages in an amount exceeding this courts jurisdictional minimum.

**354.** The conduct of Defs. was willful and wanton and in reckless disregard of Pl.s rights, thereby entitling Pl. to punitive damages against these individual Defs.

**355.** WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in an amount fully sufficient to compensate him for his damages including compensatory damages, back pay, and front pay, for attorney fees and costs of this action, and for punitive damages, and other appropriate injunctive and equitable relief and for such other relief as the court may deem appropriate.

### JURY DEMAND

Plaintiff demands a trial by jury of all issues triable to a jury.

Respectfully Submitted,    *M. Tidriri*

Dated this 20 day of September 2023.
Moulay Tidriri
P.O. Box 222 Gilbert, Iowa 50105
Email: mtctyasa@gmail.com